**Gary LAWRENCE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 82–1404.**

District of Columbia Court of Appeals.

Argued May 10, 1984.

Decided Sept. 25, 1984.

---

Mark Carlin, Public Defender Service, Washington, D.C., with whom James Klein, Public Defender Service, Washington, D.C., was on brief, for appellant.

Daniel S. Seikaly, Asst. U.S. Atty., Washington, D.C.; with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and W. Randolph Teslik, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and ROGERS, Associate Judges.

NEWMAN, Chief Judge:

Lawrence was convicted of carnal knowledge and indecent liberties with a minor. D.C.Code §§ 22–2801, –3501(a) (1981). He asserts three grounds for reversal, only one of which has merit.[1] We find that the trial court violated appellant Lawrence's Sixth Amendment right to confront the witnesses against him by limiting his cross-examination of the government's primary witness. We therefore reverse appellant's conviction.

L.T. was staying at the home of her grandmother, Rosalee Mayo, while her parents were out of town. Mrs. Mayo's two sons and two daughters, Jacqueline and Darlene, also lived in the house. Lawrence had been living with Jacqueline for several

months. Around noon on August 15, 1981, Rosalee drove Jacqueline to a job interview, leaving appellant to babysit.

L.T. who was six years old at the time of trial, testified that she was playing and watching television in the bedroom with appellant. While she was running around in the room, she stepped on the television cord and received an electrical shock. She testified that appellant pulled her underpants down, pushed his own pants down around his knees and "put his stuff into me." Using two dolls, L.T. demonstrated for the jury how appellant had placed himself between her legs, got on top of her on the bed, and inserted his penis in her vagina.

Darlene Mayo was in the kitchen while Lawrence was in the bedroom with L.T. Darlene walked to the bedroom, and saw L.T. combing Lawrence's hair. After telling her to pick up some books with which she had been playing, Darlene returned to the kitchen. Shortly thereafter, Darlene noticed that the bedroom door was closed. Looking through a space between the door and the frame, she saw L.T. partially clothed, lying on the bed and Lawrence, his pants around mid-thigh, lying on top of her. Darlene knocked on the door and waited until she was told to enter. Upon opening the door, she saw Lawrence standing approximately four feet from the bed and L.T., also standing and nervous, attempting to close her robe.

A short time later, L.T. left the bedroom followed by Lawrence and Darlene. When she was able to speak with L.T. alone, Darlene asked her what was wrong. L.T. initially did not respond to this question. However, when Darlene inquired again, L.T. replied that she had stepped on the television cord; that appellant had pulled down her panties and told her that "if she wouldn't do it" he would tell Jacqueline that she had stepped on the television cord. She stated that Lawrence penetrated her

---

1. The appellant also contends that the trial court erred in finding the victim, L.T., competent to testify, and in quashing a subpoena for certain medical records.

after she told him that she didn't want to do it. Darlene then took L.T. downstairs to the kitchen. Approximately twenty minutes later, Rosalee and Jacqueline Mayo came home.

After talking to Darlene Mayo, Rosalee took L.T. for a ride in the car to speak with her. L.T. repeated what she had told Darlene. Rosalee returned to the house and confronted appellant with L.T.'s accusation, which he denied. She then ordered him from the house. Soon after, she saw appellant leave with Jacqueline and L.T. waiting for a bus ·to go to Children's Hospital.

L.T. was examined at Children's Hospital by Dr. Allen Rauch, who was on duty in the emergency room.[2] L.T. told him that a man had pulled her pants down and "put [ ] his thing in me," pointing to her genitalia. She told him that she had experienced pain in her vaginal area earlier, but that it was no longer hurting. Rauch conducted a careful physical examination of L.T. with particular attention to any evidence of trauma. His examination revealed a redness in the lining of the vagina which he described as "most consistent with mechanical trauma."[3] Rouch was confident that the trauma had occurred within the previous twelve hours. Adding that it was consistent with the introduction of an adult penis into L.T.'s vagina within the three hours preceding his examination, Rauch called the hospital's sex abuse team, who then called the police.[4]

Lawrence presented Dr. Dennis Hannon as an expert medical witness. Hannon testified that the hospital records concerning the emergency room treatment rendered to L.T. did not support the occurrence of vaginal penetration. He also noted the medical distinction between a finding of "suggestive of" and a finding of "comparable with," observing that the former is a more specific diagnostic tool. Hannon also stated that vaginal penetration with an erect penis would cause bleeding in a five-year-old.

Appellant argues that the trial court's restriction of the cross-examination of Darlene Mayo, a key government witness, resulted in a denial of his Sixth Amendment right to confrontations. Appellant claims that the trial court erred in preventing exploration into prior false accusations of sexual activity made by Ms. Mayo against other family members. The government contends that the trial judge's restriction of cross-examination was an appropriate exercise of discretion.

██ The Sixth Amendment guarantees to a defendant in a criminal prosecution the right to be confronted with the witnesses against him. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). Central to the fundamental right of confrontation and to the conduct of an effective defense is the opportunity to cross-examine government witnesses against the defendant. *Id.* at 315–16, 94 S.Ct. at 1109–10. Although the extent of cross-examination is within the discretion of the trial court, *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931), the trial court's "wide latitude in the control of cross-examination ... 'cannot justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." *Springer v. United*

---

**2.** Rauch was qualified without objection as an expert witness in the detection of trauma and injuries to young children.

**3.** On cross-examination, Rauch stated that his findings were not "suggestive of" penetration, but were "consistent with" penetration, a diagnostically significant distinction. He also stated that there were alternative explanations for those observations that *he considered consistent with the penetration of a penis.*

**4.** There was evidence that L.T. was "alert", cheerful and in no distress when examined. Rauch saw no trauma about L.T.'s body nor did he see evidence of external or internal trauma to her genitalia. L.T. had no hymen, but Rauch found it had been traumatized in the distant past. There was no discharge in the genital area. Nor was there semen or sperm in her vagina. He testified that the redness could have been caused by a bacterial infection, bubble bath or synthetic fiber.

*States,* 388 A.2d 846, 855 (1978), quoting *United States v. Harris,* 501 F.2d 1, 8 (9th Cir.1974).

■ The cross-examination may not only delve into the witness' story to test the witness' perception and memory but the cross-examiner has "traditionally been allowed to impeach; *i.e.,* discredit the witness." *Davis v. Alaska, supra,* 415 U.S. at 315, 316, 94 S.Ct. at 1109, 1110; *Springer, supra.* A well recognized means of discrediting a witness is inquiry into that witness' bad acts. A witness may be cross-examined about a prior bad act which has not resulted in a criminal conviction where

> (1) the examiner has a factual basis for the question and (2) the bad act bears directly upon the veracity of the witness with respect to issues involved in the trial.

*Sherer v. United States,* 470 A.2d 732, 738 (D.C.1983). *See also Kitchen v. United States,* 95 U.S.App.D.C. 277, 221 F.2d 832 (1955), *cert. denied,* 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958); *Mintz v. Premier Cab Association,* 75 U.S.App.D.C. 389, 127 F.2d 744 (1942). However, where such impeachment is permitted, evidence of the prior misconduct may be elicited only by cross-examination of the witness; it generally may not be proved by extrinsic evidence. *United States v. Akers,* 374 A.2d 874, 878 n. 9 (D.C.1977). *Cf. McLean v. United States,* 377 A.2d 74 (D.C.1977).

■ We need not decide whether the *McLean* line of cases would have entitled Lawrence to present extrinsic evidence if Darlene Mayo either denied making the prior accusations or admitted making them and asserting that the accusations were true. Here, although specifically requested to permit the questions to be asked of Darlene Mayo even if it would not permit impeachment by extrinsic evidence of her answer was unfavorable to Lawrence, the trial court specifically ruled that the questions could not even be asked. This was error. *Sherer v. United States, supra,* 470 A.2d at 738.

An examination of the record reflects a curtailment of an appropriate line of cross-examination which prevented the jury from receiving information essential to an assessment of Darlene Mayo's credibility as a government witness. Appellant sought to confront Darlene Mayo with the fact that she had accused Michael Mayo in April 1981 of having intercourse with her five-year-old daughter and with the fact that she had accused Jacqueline in July 1981 of having intercourse with their elderly uncle. The trial court refused to allow this line of inquiry. Regardless of her response, the jury could have assessed Mayo's truthfulness and veracity by defense counsel's probe of this sensitive area and have viewed her testimony with greater skepticism. The trial court's action may have kept "from the jury relevant and important facts bearing on the trustworthiness of crucial testimony ... [of] ... a key witness ... [whose] testimony establishes a required element of the charged offense ... [and] has little independent corroboration...." *Springer, supra,* 388 A.2d at 855.

The trial court's error in this curtailment of cross-examination is rendered more severe by the fact that Mayo was a key government witness. Her observation of the alleged sexual activity and the victim's demeanor following the offense provided crucial corroboration for L.T.'s testimony. Moreover, without Mayo's testimony, it is unlikely that the government's evidence was sufficient to convict on either charge. The victim's testimony suggested ambivalence and she was often uncooperative during both direct and cross-examination. The medical testimony yielded conflicting results regarding whether or not vaginal penetration had occurred. A review of the record indicates that Mayo's corroborating testimony was among the government's most persuasive evidence. Under the circumstances, extensive cross-examination as to Mayo's credibility was required to satisfy the confrontation guarantee.

We need not decide whether under *Springer v. United States, supra,* 388 A.2d at 856, the error should be reviewed under the *in limine* test or the constitutionally harmless test, for under the latter test (as indeed would be the case under the lesser test of abuse of discretion), we find the error to require reversal.

*Reversed.*