**Rocky L. BROWN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 96–CO–1508.**

District of Columbia Court of Appeals.

Argued Nov. 12, 1998.

Decided Oct. 7, 1999.

---

Samia Fam, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

William F. Gould, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Halsey B. Frank, were on the brief, for appellee.

Before TERRY, FARRELL and REID, Associate Judges.

FARRELL, Associate Judge:

Brown was found guilty by a jury of the armed robbery of Mario Barber and a related firearm offense. Barber was the sole eyewitness to the alleged robbery. In *Brown v. United States*, 683 A.2d 118 (D.C.1996) (*Brown I*), we concluded that in foreclosing Brown's cross-examination of Barber as to a potential motive to lie, "the [trial] judge erred in applying an unduly restrictive legal standard which undermined her exercise of discretion." *Id.* at 126.[1] Consequently, we remanded the case to the trial court to determine whether "Brown [could] proffer[] sufficient facts ... to support a 'genuine belief' or a 'well-reasoned suspicion,' ... that [Barber's] alleged drug abuse provided a motive to lie, and ... [if so, whether] the prejudicial effect of the proposed evidence ... substantially outweigh[s] its probative value." *Id.* at 128. On remand, the trial court determined that, while Brown's proffer marginally exceeded the threshold showing needed to justify the questioning, its probative value was "weak" and was outweighed by what the judge considered its marginal relevance and potential to inject inflammatory suggestions of drug use into the case.

---

1. Essentially, the trial judge had been of the view that questions as to whether Barber had been trying to purchase drugs at the time of the alleged robbery would be relevant only if there was reason to believe Barber was under the influence of drugs—hence his perceptions were impaired—at the time of the offense.

*Brown I*, 683 A.2d at 125. We rejected this reasoning, pointing out that such questions, if supported by an adequate foundation, could also go to the issue of whether he had a motive to lie to cover up illegal activity on his part. *Id.* at 126.

We are constrained to hold that the trial court abused its discretion in excluding the proposed cross-examination. Despite a proffer supporting a good faith belief by the defense that Barber fabricated the account of the robbery to conceal his purchase of drugs that evening, the trial court prohibited any cross-examination whatsoever designed to suggest this theory of bias. We conclude that this total exclusion of questioning could not be justified by any obligation on the court's part to balance the probative versus prejudicial value of the proffered evidence. And because we also are unable to conclude that the erroneous prohibition of the questioning was harmless error, *see Brown I,* 683 A.2d at 127 n. 10, we reverse and remand for a new trial.

## FACTUAL SUMMARY

The underlying facts leading to Brown's conviction were set forth in *Brown I, supra,* 683 A.2d at 120–24, and need not be repeated in this decision, except as necessary to our analysis of Brown's proffer. On remand, Brown made the following proffer:

> [W]hat happened on . . . [the] night of this alleged robbery is that it was not a robbery at all, but that it . . . was an incident where Mario Barber was seeking to buy drugs, specifically marijuana. And that in the course of that transaction, there was a disagreement between Mario Barber and the person or persons from whom he was attempting to buy the drugs. And during that dispute, the shotgun was discharged and he was shot by someone other than Rocky Brown. And that Mr. Barber's motive to fabricate in this situation was specifically that he did not want to reveal to law enforcement authorities what he really was doing on Georgia Avenue that evening because that activity was illegal and

2. In *Brown I,* we noted that "parts of [Barber's] account of the events . . . were arguably

therefore he made up, fabricated the story that he had been robbed.

Brown's counsel stated that this proffer was "based on what I consider to be reliable, privileged information," specifically, "firsthand information . . . from somebody who was on the scene." The proffer was further supported, counsel asserted, by the evidentiary contradictions at trial between Barber's testimony that his wallet and jacket had been taken in the robbery and the fact that his wallet was found at the scene and his jacket was seen to be in his possession later that night. Finally, counsel claimed support for the proposed questioning in Barber's "irrational version of events and how things happened, and how he went from one place to another and tricked these robbers even though they were so bent on robbing him . . . ." [2]

## ANALYSIS

■ As we explained in *Brown I,* Barber was cross-examined at trial about his possible motive to fabricate the robbery in order to gain favor with the government, and so avoid prosecution, for a scheme to defraud his former employer that was being investigated at the time of trial. *Brown I,* 683 A.2d at 122. Nevertheless, as we also recognized, Barber's claimed motive to lie in order to cover up his alleged purchase of drugs at the time the robbery was supposed to have occurred was a separate, "entire line of cross-examination," which the trial court had precluded entirely. *Id.* at 127 n. 10. In the Supreme Court's words, it was cross-examination "designed to show a prototypical form of bias on the part of the witness," *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), and if it was "otherwise appropriate," *id.*—*i.e.,* if it was supported by an adequate proffer of facts under our cases—then complete preclusion of it was

quite improbable." 683 A.2d at 127 n. 10.

constitutional error.[3] On this appeal following remand, therefore, our primary inquiry is whether Brown proffered "some facts which support a genuine belief that [Barber was] biased in the manner asserted," *Jones v. United States,* 516 A.2d 513, 517 (D.C.1986), or—as we have alternatively formulated the requirement—"a well-reasoned suspicion rather than an improbable flight of fancy to support the proposed cross-examination." *Scull v. United States,* 564 A.2d 1161, 1164 (D.C. 1989). As we pointed out in *Brown I,* this standard is a "fairly lenient" one. *Brown I,* 683 A.2d at 125. At the same time, the decision as to adequacy of the proffer lies within the sound discretion of the trial court. *Id.*

We agree with Brown that he made the necessary showing of a good faith belief to support that questioning. Indeed, the trial court ultimately did not disagree with that conclusion. As we discuss later, the court barred the questioning on the ground that, notwithstanding an adequate proffer, the probative value of the questions on the issue of bias was outweighed by their potential to distract and inflame the jury with degrading evidence of drug use by Barber. Along the way, however, the judge made a distinction that requires examination. The court determined that, since the source of the proffer was "someone who was on the scene," Brown's counsel "had a good faith basis for believing that [Barber] may have been trying to buy marijuana." Nevertheless, the court reasoned that what might have begun as an attempt to buy drugs by Barber could still have ended up in a robbery of him by Brown and others, and so the proffer of facts suggesting an attempted drug purchase did not "translate ... into" a good faith belief that Barber had a motive to fabricate the robbery. This distinction seems to us very doubtful. Although an attempt to buy marijuana *could* have

turned into a robbery, a jury that chose to believe that Barber—despite his denial—had been attempting to buy drugs could equally choose to reject his entire account of the events, including the robbery. Thus, the possibility that both an attempted drug buy and (later) a robbery took place did not make inadequate Brown's proffer of a motive to fabricate which the trial court itself found to be "logically coherent" and founded on the "good-faith basis" of an eyewitness.

■ In any case, as we have explained, the trial court ultimately accepted the sufficiency of the proffer and did not bar the questioning of Barber on that ground. Rather, the court moved on to what it considered "the next stage of the inquiry," whether the probative value of the proffered questions about a drug buy exceeded their potential for prejudice in the form of distracting or, worse, inflaming the jury by injection of drug use into the case. Balancing the "weak[ness]" of the proffer against that prejudice, the court prohibited the questioning. The court's belief that it was authorized to—indeed, was obliged to—engage in this balancing gives rise to the main doctrinal dispute between the parties on appeal.

Brown contends that once the *Jones/Scull* showing of a genuine belief or well-reasoned suspicion to support the questioning had been made, the trial court could not properly exclude *all* questioning on the subject based upon a weighing of probative versus prejudicial value. Although the court retained discretion as to the amount and, perhaps, the form of the questioning, Brown reasons, it had no authority to disallow "an entire line of cross-examination" related to bias. *Brown I,* 683 A.2d at 127 n. 10. *See Van Arsdall,* 475 U.S. at 679–80, 106 S.Ct. 1431 ("[T]rial judges retain wide latitude ... to impose *reasonable limits* on [bias] cross-examination," but "prohibit[ing] all inquiry" re-

3. As we also determined in *Brown I,* that error could not be held to be harmless on the facts of this case. 683 A.2d at 127 n. 10.

garding "a prototypical form of bias" violates the Confrontation Clause) (emphasis added; original emphasis deleted); *Springer v. United States*, 388 A.2d 846, 855 (D.C.1978) (quoting *United States v. Houghton*, 554 F.2d 1219, 1225 (1st Cir. 1977) (with respect to exposing bias or partiality, the "discretionary authority [to limit questioning] comes into play after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment")). The government responds that Brown's argument would "liberate" bias evidence "from the constraints placed on other types of evidence" by denying the trial court authority to exclude questioning that—though proffered in good faith—is "only marginally relevant." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431. The government points out that in *Brown I* we explicitly directed the trial court on remand to "determin[e] whether Brown's proffer ... was adequate under our case law *and* whether its probative value was sufficient to offset its prejudicial effect," *Brown I*, 683 A.2d at 128 (emphasis added), rather clearly requiring a two-step inquiry. Brown, obviously uncomfortable with the second part of this directive, asserts that it was "unnecessary" and that *Brown I*'s insistence on such balancing was "surplusage."

■ This case, we conclude, does not require us to determine the precise nature of the discretion the trial court retains to control (or preclude) bias cross-examination that meets the *Jones/Scull* test. Assuming *arguendo* that the court nonetheless has discretion to preclude questioning about a motive to fabricate supported by a genuine belief on the part of counsel, any such exclusion would have to be undertaken with "the utmost caution and solicitude for the defendant's Sixth Amendment rights." *Springer*, 388 A.2d at 855 (citation and internal quotation marks omitted). A complete exclusion, in other words,

would bear a very heavy burden of justification when lesser restrictions are available. In this case, we are convinced that the trial court abused its discretion in barring any cross-examination about Barber's motive to fabricate in order to conceal his alleged motive to buy drugs.

An important fact which the trial court relied on in finding Brown's proffer "weak" was the undisclosed identity of the alleged eyewitness, so that "the [c]ourt [was] not able to test whether the source [itself] had a motive to fabricate" or was "a noninvolved bystander without a motive to lie." In a related context, however, we have stated that "[i]n evaluating the reliability of the proffer ... the court must not seek to evaluate the reliability of the witness." *Newman v. United States*, 705 A.2d 246, 259 (D.C.1997) (quoting *Martin v. United States*, 606 A.2d 120, 129 (D.C.1991)). Conditioning bias cross-examination on the court's ability to assess the credibility of the source of the alleged motive runs too close to usurping the jury's function. *See Martin, supra; Davis v. Alaska*, 415 U.S. 308, 317, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Nor is it of significant weight that the proffered witness apparently would have asserted a "privilege" if asked to testify about the events. The proffer was in support of the right only to question Barber about the alleged purchase gone wrong; if he denied the implied accusation and if—as expected—Brown was unable to contradict him with extrinsic proof of the bias, Brown alone would bear the risk of the jury accepting the denial as unrebutted (and perhaps penalizing him to boot for a groundless allegation).

In keeping with *Brown I, see* 683 A.2d at 125, and our decisions generally, the trial court also was concerned with the inflammatory and degrading potential of a charge that the victim of a crime was a drug user. *See Ford v. United States*, 549 A.2d 1124, 1126 (D.C.1988).[4] But while

---

4. Rather at odds with the trial court's concern with prejudice from the mention of drugs was its view that the proffer was weak

because it "involve[d] marijuana as opposed to a more dangerous drug," and that "[a] person trying to buy marijuana has less incen-

*Ford* recognized "the 'highly inflammatory nature' of drug activity allegations," it was careful to state that "these prohibitions are not absolutes, any more than is an unlimited right to show bias." *Id.* at 1127. And in *Ford* the court held the danger of incendiary character inferences of this sort insufficient to justify the trial court's "prohibit[ion of] *all* inquiry into the possibility [of a motive for bias]" on the witness's part. *Id.* (emphasis in. original). On the facts of this case, the trial court's conceded discretion regarding the scope of cross-examination almost certainly would have justified a limitation on the drug inquiry, by (for example) permitting questioning about what Barber was doing *that evening* but not about any alleged drug use by him on other occasions. As the Supreme Court has made clear, however, the difference between such a limitation and a complete prevention of questioning on a relevant theory of bias may be the constitutional divide.

The remaining considerations cited by the trial court do not persuade us that exclusion of the bias theory altogether was permissible. The fact, as we stated earlier, that Barber was cross-examined for bias in other respects goes conceptually to whether the error was harmless, not whether error—of the constitutional sort— was committed. *See also Jenkins v. United States,* 617 A.2d 529, 532 (D.C.1992). And the same holds as to the "extremely remote possibility" the trial court found that Barber "would have changed his testimony that [Brown] robbed him at gun point, given the rigorous cross-examination [to] which he already was subjected."

The trial court conscientiously sought to apply the standards discussed in our opinion remanding the case. We nonetheless conclude that it imposed too great a burden on Brown to proffer evidence supporting cross-examination of the government's

principal witness on the key issue of bias, *see United States v. Abel,* 469 U.S. 45, 50, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). And because we have previously determined that an erroneous exclusion of that questioning would *not* be harmless error on the facts of this case, *Brown I,* 683 A.2d at 127 n. 10, the judgment of conviction must be, and it is,

*Reversed and remanded for a new trial.*

---

tive to fabricate than one trying to sell marijuana." As Brown suggests, "If the probative value of the bias evidence is dulled by the purported insignificance of a marijuana buy, so is its prejudicial effect." In any case, the trial court's own view that an attempted marijuana purchase was too little incentive to fabricate a robbery could not supplant a jury's, where the effect was to bar all cross-examination on the subject.