Richard A. SHORTER, Appellant,

v.

UNITED STATES, Appellee.

Nos. 98–CF–194, 98–CO–1937.

District of Columbia Court of Appeals.

Argued Feb. 17, 2000.

Decided Dec. 6, 2001.

Steven R. Kiersh for appellant.

Chrisellen R. Kolb, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, at the time the brief was filed, John R. Fisher, Mary–Patrice Brown, Julieanne Himelstein, Joan Draper, and Chrisellen R. Kolb, Assistant United States Attorneys, were on the brief for appellee.

Before WAGNER, Chief Judge, and FARRELL and REID, Associate Judges.

REID, Associate Judge:

Appellant Richard A. Shorter challenges his convictions for child sexual abuse of and threat to injure T.J.[1] He claims, primarily, that the trial court violated his constitutional Sixth Amendment right of confrontation by refusing his request to cross-examine T.J., or to conduct a *voir dire* of T.J. and her mother, about T.J.'s alleged prior allegation of sexual abuse which she later recanted. He also contends that the trial court erred by: 1) denying him the right to examine psychological reports regarding the complaining

---

1. Shorter was convicted of: 1) first-degree child sexual abuse (penetration of T.J.'s anus in her mother's bedroom), in violation of D.C.Code § 22–4108 (1996); 2) threatening to injure T.J. (in her mother's bedroom), in violation of § 22–2307; 3) second-degree child sexual abuse (contact with T.J.'s genitalia in her mother's kitchen), a lesser included offense of first-degree child sexual abuse; and 4) first-degree sexual abuse (penetration of T.J.'s anus in her cousin's bedroom closet), in violation of § 22–4108.

witness and her siblings; 2) failing to grant a mistrial during the complaining witness' testimony; 3) allowing the government to introduce photographs of rooms in his home that were in disarray; and 4) denying his D.C.Code § 23–110 motion (ineffective assistance of counsel) without a hearing and without appointing counsel for him. We remand this case for further proceedings with respect to appellant's primary contention, but reject his remaining arguments.

## FACTUAL SUMMARY

The government's trial evidence showed the following facts. Between September 2, 1996 and May 14, 1997, T.J., who at the time was seven years of age, complained that Shorter, her mother's fiancé, whom she called "Uncle Rick," and who is the appellant in this case, had sexual contact with her on three different occasions.[2] On one of those occasions, he threatened to injure her.

During one incident, Shorter called T.J. into her mother's room and told her to "lay down" on her mother's bed; her mother was not at home.[3] He removed her pants and underwear, as well as his own, and "laid on top of [her]" while she was on her stomach. Shorter told T.J. that "if [she] told her] mother, he [would] kill [her]." T.J. stated that Shorter did "nasty stuff." She demonstrated his sexual penetration of her anus by using a male and a female doll. T.J. did not immediately report this incident "[b]ecause [she] was scared."

Another incident took place in the kitchen of T.J.'s home while T.J. was washing the dishes and helping Shorter to prepare dinner; her mother was asleep. T.J. stated that Shorter "was standing close to [her] hard"; no one else was in the kitchen. He asked her whether "it fe[lt] good and . . . [she] said no." Shorter moved to a chair, sat down and told T.J. to come to him. According to T.J., Shorter "sat [her] on his lap [facing him while both were still clothed], and then he did that nasty stuff. [H]e was moving up and down, and . . . asked [her whether] it fe[lt] good and . . . [she] said no . . . ." When T.J.'s sister came into the kitchen Shorter "got [her] off his lap." Later on that night, T.J. informed her mother about Shorter's actions.

One other incident began while T.J. was doing her homework "on the living room table." Shorter approached her to see if she "want[ed] to do it again and . . . [T.J.] said no . . . ." T.J.'s mother was not at home, and her brother and sister were in the kitchen. After T.J. rebuffed him, Shorter went to T.J.'s cousin's room. Later, he called T.J., telling her he "[w]ant[ed] to talk to [her]." T.J. went to her cousin's room, and when Shorter asked again if she wanted to do it, T.J. "said no and [Shorter] was mad." He asked: "Why you don't want to do it again?" He "laid [T.J.] down in [her] cousin's closet." T.J. also said that Shorter "pushed [her] down." Then, "[h]e did that nasty stuff." He pulled down his pants and pulled up the skirt to her school uniform, but did not remove her underpants. He manipulated himself, laid down on top of T.J., and made sexual contact behind her, stopping when he heard T.J.'s sister, and quickly rearranging his clothes as well as those of T.J. T.J. again did not immediately report the incident because she "was still scared."

---

**2.** The precise date of two of the incidents of child sexual abuse is not clear from the record on appeal. According to the indictment, the third incident (in the cousin's bedroom closet), took place on or about May 14, 1997.

**3.** Persons residing in the home at the time were Shorter, T.J.'s mother, T.J.'s younger brother, her slightly older sister; and Shorter's daughter and son, as well as his daughter's three babies.

## ANALYSIS

We turn to Shorter's contention that the trial court erred by denying him the opportunity to cross-examine T.J., or to conduct a *voir dire* of T.J. and her mother, concerning a recanted allegation of a prior sexual assault against her by Shorter. Shortly before trial, the government filed a motion in limine to exclude irrelevant evidence, including "evidence of prior reports of sexual abuse made by T.J. . . . ." The government stated, in pertinent part: "The defendant may seek to cross[-]examine T.J. on a prior report of sexual abuse made to her mother. . . ." The issue of cross-examination concerning T.J.'s alleged prior report of sexual abuse was joined late on a Friday evening during the cross-examination of T.J. Defense counsel advised the trial judge that:

> [L]ast year, [T.J.] accused [ ] Shorter of doing something similar in the nature of sexual molestation or abuse, and after she made that report to her mother——I believe the same day——she recanted and said that's not true.
>
> What I would like to do is cross-examine her about that, ask her if there was a time apart from the three times that she's talked about that she accused her uncle and then said it wasn't true.

When the trial court pointed out that a recantation did not establish falsity of the prior sexual assault allegation and that Shorter would have to show convincingly its falsity, his counsel asked for a *voir dire* of T.J. and her mother. In response to the trial court's request for the government's view regarding *voir dire* of T.J. and her mother, the prosecutor gave a proffer of what T.J. would say about the prior allegation:

> [T]he defendant did touch her, I believe he touched her on her vagina. . . . [T]he child told her mother, . . . her mother threatened her that she was going to

punish her if she didn't say that it didn't happen and [T.J.] was extremely frightened and scared of her mother and even more so scared of the defendant and said okay mommy, it didn't happen.

> She would testify that the mother was mad when she told her that, that she wanted to please her mother, that she was very hurt and that she didn't want to hurt her mother and so she just let her go.

The trial judge made a tentative ruling, allowing Shorter to "cross[-]examine T.J. about the particulars [of the charged sexual assaults] and whether [T.J.] previously made any statements that [were] different than the particulars that she testified to today." On the other hand, the judge explained her reasons for proposing to deny the defense request to conduct a *voir dire* of T.J. and her mother: 1) the mother did not witness the recanted incident; and 2) "given the Government's proffer[,] and the fact that this is a child[,] I think it would be both not necessary and arguably detrimental to the child were the Court to conduct a *voir dire* on the matter that is not going to be the subject of the trial." The trial judge was convinced that "the *voir dire* would not establish the falsity of the prior accusations," and that a mini-trial during the trial would be "confusing" to the jury, whether conducted in or outside the jury's presence.

On the Monday morning following the exchange between counsel and the trial judge regarding the prior allegation of sexual molestation that T.J. recanted, Shorter filed a written memorandum, citing his constitutional Sixth Amendment right to confrontation, and claiming that the prior allegation was admissible: "(a) as substantive evidence of his defense theory that T.J. had fabricated these allegations [of other sexual assaults]; (b) to [show] T.J.'s state of mind, credibility and bias against

Mr. Shorter; and (c) to rebut the inference that [T.J.'s mother], a defense witness, disbelieved T.J.'s allegations without reason and to rehabilitate [T.J.'s mother] as a defense witness." [4] The trial judge decided that "this issue of alleged prior false accusations will not be admitted"; in part because: 1) T.J.'s mother's disbelief of her daughter's allegation "had not been introduced as substantive evidence"; 2) "even if [T.J.'s] recantation is shown convincingly, [it] is not convincing evidence that the underlying accusations were false"; and 3) T.J. could be cross-examined about "prior inconsistent statements about what happened in the kitchen the day before the report in school. . . ." [5]

When defense counsel continued to press the recantation issue, the trial judge asked for a proffer as to her cross-examination of T.J. Defense counsel attempted to link the alleged October recantation incident to the kitchen incident about which T.J. had testified, and to show that T.J.'s report of the kitchen sexual molestation was false, in part because of an alleged inconsistency as to whether there had been a touching or a penetration. [6] As defense counsel put it:

> It is our belief that it is an October report that she made to her mother and then recanted. And I think it would be appropriate for me to cross[-]examine her by asking something along the lines

of what you say happened in the kitchen and you told your mother about that and then later told her that wasn't true. And I'm asking the Court whether that falls into the Court's ruling of appropriate examination.

The trial court responded: "It does not." When defense counsel asked why, the judge explained:

> [Y]ou are trying to slip in a prior false allegation that has not been demonstrably shown to be false. . . .
>
> If you simply want to cross[-]examine her about the timing you may. But to try to bring before the jury a claim of a prior false allegation cannot be done in this case given my ruling as to the lack of substantial evidence of . . . falsity and the balancing issue of it being a minitrial on another issue.

In reaction to the trial judge's statement, defense counsel reiterated her request for a *voir dire* of T.J. or her mother, based on a good faith basis to question one or the other about the recantation. The government opposed the *voir dire* of both, pointing out, first, that: T.J.'s mother was not present when the alleged sexual molestation took place; and second, proffering what T.J. would say. [7] When defense counsel continued to link the kitchen incident with the alleged October recantation, the

---

4. According to the defense memorandum, T.J.'s mother "has indicated that on or about October of 1996, T.J. reported to her that [ ] Shorter had sexually assaulted T.J. Shortly thereafter, T.J. recanted the allegation by admitting to [her mother] that her allegation against [ ] Shorter was not true."

5. The day after the kitchen incident and T.J.'s report to her mother, T.J. and her brother had an argument at school. When a teacher inquired as to why T.J. and her brother were engaged in argument, T.J. informed the teacher about Shorter's sexual contact with her.

6. While the bench conference was in progress, the trial judge reviewed the grand jury testimony of a detective indicating "vaginal contact in the kitchen incident . . . ."

7. According to the prosecutor, T.J. would say that Shorter did have sexual contact with her with his hand, and that when she told her mother about it, "her mother threatened . . . to punish her if she didn't say that it didn't happen and [T.J.] was extremely frightened and scared of her mother and even more so[,] scared of [Shorter] and said okay mommy, it didn't happen."

trial judge made her final ruling: "You may cross[-]examine about the particulars and whether she previously made any statements that [were] different than the particulars that she testified to today.[8] You may not based on what's been said so far ask anything about a prior recantation. . . ." The judge also denied the request for the *voir dire* of the mother because she was not present during the kitchen incident. She also refused to permit the *voir dire* of T.J. on the grounds that it was unnecessary, and "arguably [would be] detrimental to the child. . . . [and] would not establish the falsity of the accusations." Following the bench conference, defense counsel conducted rather extensive cross-examination of T.J.

■■■ On appeal, Shorter contends that the trial court violated both his Sixth Amendment right of confrontation and his Fifth Amendment right to present a defense by excluding evidence of the prior sexual abuse allegation.[9] It is beyond dispute that a defendant has a constitutional right to be confronted with the witnesses against him. *See Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and to show witness bias, *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *see also Springer v. United States,* 388 A.2d 846, 854–55 (D.C.1978). Indeed, "[p]rejudicial error may result from limiting a defendant's right to cross-examine a crucial government witness, especially a witness without whose testimony the government could not prove guilt." *Wright v. United States,* 508 A.2d 915, 923 (D.C.1986) (citing *Moss*

*v. United States,* 368 A.2d 1131, 1134–35 (D.C.1977) (citation omitted)). Moreover, "[a]lthough the extent of cross-examination is within the discretion of the trial court, the trial court's wide latitude in the control of cross-examination . . . cannot justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." *Lawrence v. United States,* 482 A.2d 374, 376 (D.C.1984) (quoting *Springer, supra,* 388 A.2d at 855 (internal quotations and other citation omitted)). We recognized these fundamental principles both in *Roundtree v. United States,* 581 A.2d 315 (D.C.1990) and *Lawrence, supra,* cases which the government and Shorter, respectively, advance as controlling the outcome of this case. *Roundtree* affirmed the trial court's preclusion of the cross-examination of the complaining witness about prior allegations of sexual assaults, and *Lawrence* concluded that the trial court violated the appellant's Sixth Amendment confrontation right by disallowing such cross-examination.

In claiming trial court error, Shorter relies primarily upon *Lawrence, supra,* and distinguishes *Roundtree, supra,* on the ground that in *Roundtree,* there was corroborating evidence to show that the prior allegation was true; the prior allegation involved others rather than the defendant; and the trial court conducted a *voir dire* examination. Further, Shorter insists that T.J.'s recantation itself establishes the falsity of her prior allegation, and that, "[t]he failure of the trial court to allow examina-

8. Earlier, the trial judge declared: "The new motion does suggest and of course would be proper cross[-]examination [if] the defense thinks the child has made prior inconsistent statements about what happened in the kitchen the day before the report in school[,] then of course she may be cross examined about that."

9. As the government notes, in this court, Shorter does not link the kitchen incident with T.J.'s alleged prior false report of sexual contact. Given our disposition regarding Shorter's Sixth Amendment argument, we do not examine his claim of a Fifth Amendment violation.

tion of this issue [at least through a *voir dire* of T.J. and her mother] ... deprived [him] of a fair trial." In response, the government argues that there was no violation of Shorter's constitutional rights, and the trial court did not abuse its discretion in excluding evidence of the prior assault allegation. Relying on *Roundtree, supra,* the government maintains that Shorter failed to show convincingly that the allegation of a prior sexual assault was false; that the government's proffer as to what T.J. would say about the prior assault allegation showed that it was not false; and that the "barebones" defense proffer was inadequate to show falsity of the prior allegation.

*Roundtree, supra,* is a case involving a conviction for sodomy under a District statute that has since been repealed. There, the defendant, a correctional officer at the D.C. Jail, sought to cross-examine the seventeen-year-old complaining witness, who was an inmate at the jail when the officer sexually molested her, about her prior allegations of sexual abuse by other men, including her brother, in the State of Minnesota.[10] After examining Minnesota documents, "the trial court indicated that there was 'no basis for inquiry into prior accusations' because there had been no 'firm determination' as to whether any of [the complaining witness's] allegations 'were false or true.' *Id.* at 319. However, the trial judge decided, apparently without the request of either party, to conduct a *voir dire* of the complaining witness before reaching a final conclusion. During the *voir dire,* the complaining witness explained her recantation and reasserted her allegations of prior sexual molestation by others. After the *voir dire,* and based on the Minnesota documents

and [the trial judge's] assessment of [the complaining witness's] testimony ...," *id.* at 320, the judge stated: "'there is no substantial basis for concluding that these assaults are fabrication.'" *Id.* Thus, cross-examination about the prior allegations was precluded, because "appellant had failed to 'show convincingly' that [the complaining witness's] allegations were false." *Id.*

On appeal, this court explained that, with respect to credibility, the complaining witness's allegations of prior sexual molestation "would be probative ... only if they were fabricated." *Id.* at 321 (footnote omitted) (referencing *Sherer v. United States,* 470 A.2d 732, 738 (D.C.1983)). We stated:

> Where an accused seeks to impeach the credibility of a witness by offering evidence that the witness has made a false claim under similar circumstances, the confrontation clause mandates that the trial court give defendant leave to cross-examine about the prior claim only where it is "shown convincingly" that the prior claim is false.

*Id.* (referencing *Sherer, supra,* 470 A.2d at 739) (other citation omitted). The *Roundtree* court recognized that in *Lawrence, supra,* we had "found reversible error in a trial court's refusal to permit the defendant to cross-examine a witness to a sexual assault on a minor about 'prior false accusations of sexual activity made by [the witness] against other family members.'" *Roundtree,* 581 A.2d at 322 (footnote omitted). That decision, however, had been premised on an apparent assumption—shared by the parties—that the prior allegations were indeed false. *Id.* No such assumption prevailed in *Roundtree,* where the trial court had conducted a *voir dire*

10. The appellant in *Roundtree* learned about the allegations as a result of the complaining witness's juvenile records which had been produced during the discovery phase of a civil lawsuit by her against him.

and "observ[ed the complainant's] testimony first hand" before concluding that the defense had failed to show the falsity of the accusations convincingly. *Id.*

■ In applying the foregoing principles and cases to Shorter's situation, we are first mindful of the fact that T.J. was a "crucial [government] witness." *See Murphy v. Bonanno*, 663 A.2d 505, 507 (D.C. 1995). Moreover, when the trial judge considered the defense request for a *voir dire* examination of T.J. and her mother about the prior alleged sexual assault which T.J. recanted, T.J.'s mother was a potentially critical defense witness. The jury's determination of Shorter's guilt or innocence would rest primarily on its perception of the credibility of T.J.'s testimony, as well as the later testimony of T.J.'s mother and Shorter. Equally important, whether T.J. had made a prior false accusation of sexual abuse against Shorter, in October of 1996, which T.J. later recanted, as alleged in Shorter's motion, was also probative of T.J.'s bias against Shorter.

Second, Shorter's proposed cross-examination pertaining to T.J.'s alleged October 1996 recantation of a prior false report of his sexual abuse would be, if the falsity were established, neither " 'repetitive [n]or [ ] marginally relevant.'" *Roundtree, supra*, 581 A.2d at 321 n. 12 (quoting *Van Arsdall, supra*, 475 U.S. at 679, 106 S.Ct. 1431). If Shorter could show convincingly that T.J. fabricated a prior charge of sexual abuse against him, a jury arguably could question her credibility regarding the three charged incidents of child sexual abuse by Shorter,[11] and could deem T.J. to be a biased witness. Third, unlike in *Sher-*

*er, supra*, Shorter's proffer of facts supporting the claimed false allegation in the past was not "scanty," "conclusory," or supported only by "inadmissible hearsay." *Id.* at 738–39. The government did not dispute that the child had made and then withdrawn the prior claim of sexual abuse; its counter-proffer was an explanation for why she had made the about-face. Finally, the trial court's concern about a mini-trial and jury confusion could have been alleviated through a limited *voir dire* examination outside the presence of the jury, and depending upon the results of the *voir dire*, limited cross-examination of T.J. about the October 1996 alleged incident and her recantation. The trial court's understandable worry about T.J. could not defeat Shorter's Sixth Amendment right to confrontation, in the absence of some objective indication that T.J.'s safety would be compromised, or that she would be harassed because of her trial testimony about the October 1996 incident and her recantation. *See Roundtree, supra.*

■ At the same time, contrary to Shorter's position and based on *Roundtree, supra*, we agree with the trial judge that a complaining witness's recantation of an alleged prior sexual assault, by itself, is insufficient to show convincingly that the accusation is false. Indeed, in this case, the government's proffer concerning T.J.'s testimony about the alleged prior sexual assault indicated that T.J. recanted, not because her accusation was untrue, but because she was afraid of her mother and Shorter, and because her mother threatened to punish her when she made the prior allegation.[12]

11. Shorter no longer contends, as he appeared to in the trial court, that the alleged recantation pertained to one of the charged acts of abuse, rather than to a separate uncharged one.

12. We also agree with the trial judge that Shorter could not use the prior allegation of sexual misconduct as substantive evidence that T.J. fabricated the charged sexual assaults. *See Roundtree, supra*, 581 A.2d at 320 n. 10.

Nevertheless, on the record before us, which contains no precise dates for two of the three charged instances of child sexual abuse, we cannot say as a matter of law that, as a result of a *voir dire* of T.J. and her mother, Shorter would be unable to show convincingly that T.J.'s allegation of a prior, October 1996, sexual assault by him was false, and thus, that T.J. was neither a credible witness nor without bias against him.[13] In contrast with *Roundtree, supra,* where "exploration into prior *false* accusations made by a witness ...." was permitted through the *voir dire* process, *id.* at 322, in Shorter's case, no direct exploration of the witnesses into the prior, October 1996 allegation of sexual assault, and the subsequent recantation, was allowed. Our decisions discussed above lead us to conclude that the government's proffer of T.J.'s testimony, by itself, could not establish the truth or the falsity of the uncharged October 1996 allegation of sexual misconduct; nor could the trial court assume its truth or falsity based solely on the government's proffer. Thus, we hold that Shorter had a good faith basis for at least a limited *voir dire* examination of T.J. and her mother about the alleged and recanted prior sexual abuse in October 1996. *See Brown v. United States,* 740 A.2d 533, 536 (D.C.1999).

Since "[p]rejudicial error may result from limiting [Shorter's Sixth Amendment] right to cross-examine a crucial government witness, especially a witness without whose testimony the government could not prove guilt....," *Wright, supra,* 508 A.2d at 923, we are constrained to "remand [this] case for the trial court to exercise proper discretion ...," by conducting a limited *voir dire* of T.J. and her mother concerning the alleged prior assault of October 1996. *Collins v. United States,* 596 A.2d 489, 494 (D.C.1991); *see also Newman v. United States,* 705 A.2d 246, 258–59 (D.C.1997). If, following the *voir dire,* "the court concludes that [cross-examination about the prior sexual abuse allegation] should have been [permitted at trial], the court shall order a new trial, for we cannot say that the omission of relevant [cross-examination of T.J. relating to her credibility and bias] ... would be harmless." *Collins, supra,* 596 A.2d at 494–95. Should the court determine that the falsity of the prior allegation has not been shown satisfactorily under the *Roundtree* standard, Shorter's "conviction ... shall stand affirmed—subject to the right to appeal the trial court's ruling." *Id.* at 495.

 Accordingly, we remand this case to the trial court for further proceedings consistent with this opinion.[14]

---

13. There was at least some testimony from T.J. that she had somewhat ambivalent feelings toward Shorter, who is the brother of her father, because of a perception that the appellant had taken her father's place.

14. We are unpersuaded by Shorter's other arguments. First, he complains that the trial court unconstitutionally and improperly denied him access to certain confidential psychological reports about T.J. After *in camera* review of T.J.'s psychological reports, the trial court declined to release them to defense counsel. Based upon our review of the record, we detect no error. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 51–53, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *Galindo v. United States,* 630 A.2d 202, 206–07 (D.C.1993); *Johnson v. United States,* 537 A.2d 555, 558–59 (D.C. 1988). In addition, we discern no error in the trial court's refusal to examine the neglect files of T.J.'s brother and sister. *See Hammon v. United States,* 695 A.2d 97, 105–07 (D.C. 1997).

Second, Shorter argues that the trial court erred in failing to declare a mistrial when T.J. made comments pertaining to her sister's role in telling their mother about Shorter's sexual abuse incident in the kitchen. The denial of a motion for a mistrial is committed to the sound discretion of the trial judge. *See Battle v. United States*, 630 A.2d 211, 225 n. 23 (D.C.1993). The challenged comments were inadvertent and the trial court promptly, and also during final jury instructions, told the jury to disregard them. Under the circumstances, there was no abuse of discretion.

Third, Shorter contends that the trial court abused its discretion by denying his motion to exclude prejudicial photographs of his home that had "little probative value." The record shows that the trial court spent time reviewing each of the government's proposed photographic exhibits before deciding whether a photograph, which reflected a dirty room, would be admitted into evidence. The court determined that some of the pictures would be useful in "illustrating the testimony" of T.J. "It is well settled that a decision to admit or exclude photographs as demonstrative evidence is within the trial court's sound discretion." *Gonzalez v. United States*, 697 A.2d 819, 827 (D.C.1997) (citing *Clark v. United States*, 639 A.2d 76, 81 (D.C.1993) (other citation omitted)). We see no abuse of discretion.

Fourth, Shorter asserts that the trial court committed error by denying his D.C.Code § 23–110 *pro se* motion to vacate his conviction and sentence, without holding a hearing or appointing counsel. The judge who decided Shorter's § 23–110 motion was the trial judge in his case, and thus, was " 'in a far better situation, than an appellate court to determine whether there is any appreciable possibility that a hearing could establish either constitutionally defective representation or prejudice to the defendant....' " *Webster v. United States*, 623 A.2d 1198, 1206 (D.C. 1993) (quoting *Sykes v. United States*, 585 A.2d 1335, 1340 (D.C.1991)). Moreover, a hearing is not "automatically require[d]....," especially "[w]here the existing record provides an adequate basis for disposing of the [§ 23–110] motion ...." *Ready v. United States*, 620 A.2d 233, 234 (D.C.1993). Nor is the appointment of counsel required where the appellant fails to state adequate grounds for relief under § 23–110. *See Jenkins v. United States*, 548 A.2d 102, 106 (D.C.1988). Our review of the record in this case, as well as the trial court's order denying Shorter's § 23–110 motion (which responds to each of the points raised by Shorter), convinces us that Shorter has not met his burden to show deficient trial counsel performance and prejudice under *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).