Henry OBIAZOR, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CF–100.

District of Columbia Court of Appeals.

Argued Oct. 9, 2008.
Decided Jan. 29, 2009.

---

O. Dean Sanderford, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Roy W. McLeese III, and Florence Pan, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, BLACKBURNE–RIGSBY, Associate Judges and FARRELL, Senior Judge.*

BLACKBURNE–RIGSBY, Associate Judge:

After a three day bench trial, Henry Obiazor, appellant, was found guilty of two counts of misdemeanor sex abuse under D.C.Code § 22–3006 (2001) and one count of simple assault under D.C.Code § 22–404

(2001). Appellant raises two issues on appeal. First, appellant contends that he was deprived of his Sixth Amendment constitutional right to confront his accuser and present a full defense where he was prevented from introducing evidence to support a bias theory of a key witness. Second, appellant asserts that the trial court erred in excluding cross-examination and evidence about three prior claims the complainant, T.D., made regarding her abuse by adults or the source of marks on her body that were allegedly later determined to be false. We reverse and remand for a new trial because the trial court erred in precluding appellant from cross-examining T.D. for bias and by excluding evidence of other false claims of abuse, and under the circumstances of this case, the error was not harmless beyond a reasonable doubt.

## I.

Appellant's convictions arose from a December 20, 2003 incident in which T.D., the twelve-year old daughter of Henry Obiazor's girlfriend, Krishanna D., accused Mr. Obiazor of touching her buttocks, touching his penis to her thigh and giving her a hickey between her collarbone and shoulder. At the time, T.D. lived with and was taken care of by Angel D., her mother's cousin. T.D.'s mother and siblings lived separately with Mr. Obiazor in a one room apartment. On the night of December 19, 2003, T.D. arrived at her mother's apartment to spend the weekend. T.D.'s grandmother, Ingrid D., was also spending the weekend at the apartment. The next afternoon Ingrid D.[1] took one of T.D.'s siblings to a birthday party, leaving T.D. in the apartment with Mr. Obiazor and the

* Judge Farrell was an Associate Judge, Retired at the time of argument. His status changed to Senior Judge on January 23, 2009.

1. We use first names in reference to T.D.'s family members for purposes of anonymity and clarity.

two youngest children. Both Ingrid and appellant stated that T.D. was expected to go to the birthday party also, but she decided to stay at the apartment instead. T.D. recalled that she was sleeping on the bed when she woke up and Mr. Obiazor sat down on the bed next to her. She said that he told her she was beautiful and began to rub her arm and buttocks through her clothing. T.D. testified that he also kissed and sucked her neck. T.D. stated that one of her younger siblings woke up and Mr. Obiazor left to fix a bottle for the child. At this point, T.D. went to the bathroom, but then returned to the bed. T.D. explained that Mr. Obiazor returned to the bed, unzipped his pants, and placed his penis on her thigh. T.D. pushed Mr. Obiazor away, grabbed some money, put on some shoes, left the apartment and walked to the hotel next door to call Angel D.

According to Garnet Coad, the hotel bellhop, T.D. seemed upset when she entered the hotel. Coad asked T.D. what was wrong and T.D. told him that Mr. Obiazor "tried to touch her." Coad helped T.D. place a call to Angel D. and then helped T.D. catch a cab back to Angel D's. Detective Williams arrived at Angel's apartment that evening and photographed the bruise on her neck and collarbone. A few days later, on December 23, 2003, Detective Williams conducted a videotaped interview of T.D.

## II.

We have held that cross-examination of bias is always proper, subject to reasonable limits. *Clayborne v. United States*, 751 A.2d 956, 962 (D.C.2000). "[A] trial judge may not prohibit all inquiry into a witness' possible motive for bias about an event or circumstance that a jury might reasonably find as indicative of bias." *Jones v. United States*, 853 A.2d 146, 153 (D.C.2004) (citation omitted). A "wholesale" bar on the criminal defendant's inquiry into the possibility of a motive for bias violates the Sixth Amendment's Confrontation Clause. *Brown v. United States*, 683 A.2d 118, 126 (D.C.1996) (citing *Ford v. United States*, 549 A.2d 1124, 1127 (D.C. 1988)). The Sixth Amendment's Confrontation Clause guarantees the right of a defendant in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. This right to confrontation is given effect by allowing a defendant the opportunity to cross-examine opposing witnesses. *See Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The ability to expose a witness's motive for testifying is a critical component of the cross-examination function. *Id.* at 316–17, 94 S.Ct. 1105.

Appellant asserts that he was deprived of the ability to show his accuser's motive for lying because the trial court did not allow him an opportunity to cross-examine her about relevant prior sexual incidents. Specifically, when T.D. was five years old she alleged that her grandmother's boyfriend had sexually assaulted her. In that instance T.D. received a hickey mark in the same location (between her collar bone and shoulder) where she claims to have received a hickey mark in this instance from Mr. Obiazor. Appellant makes two assertions with regards to this evidence. First, appellant contends that the remarkable similarity between the two incidents is an improbable coincidence that tends to make the truth of T.D.'s allegation against appellant "less probable than would be the case without that evidence." *Punch v. United States*, 377 A.2d 1353, 1358 (D.C. 1977) (holding that evidence which makes the existence of a fact less probable is relevant and has probative value). Second, appellant proffers that when T.D. dis-

closed the incident with her grandmother's boyfriend, her mother reacted affectionately and protectively toward T.D. Appellant sought to introduce a bias theory that T.D.'s allegations against appellant were motivated by a desire to evoke the same attention and affection she had received from her mother as a result of her prior allegation.

The government first asserts that the two incidents are insufficiently similar to sustain the appellant's theory of improbable coincidence. In response to appellant's second contention the government asserts that appellant's bias theory is too vague and tenuous because the incidents occurred six or seven years apart and there is no evidence in between those times showing that T.D. did things to receive affection from her mother. The government's argument overlooks appellant's first contention that the striking similarities between the two incidents makes it more likely that the latter incident is a fabrication. Further, the government cites no authority to support their assertion that a prior incident must have happened within a limited time frame, or that there must have been intervening incidents to establish a nexus between the prior incident and the current one.

In *Roundtree v. United States*, 581 A.2d 315, 326 (D.C.1990), this Court held that the defendant was not entitled to cross-examine the complaining witness regarding other prior sexual assault charges made by the witness. The *Roundtree* court reasoned that without showing that the prior allegations were false, there was no foundation established to use those prior allegations to challenge the complaining witness's veracity. *Id.* at 321. In *Lawrence v. United States*, 482 A.2d 374 (D.C. 1984), we held that the trial court committed a reversible error by excluding evidence of prior sexual allegations. *Id.* at

376–77 (holding that the trial court improperly prevented exploration into prior false accusations made by a key witness). We clarified the apparent discrepancies between *Roundtree* and *Lawrence* in *Shorter v. United States*, 792 A.2d 228 (D.C.2001), noting that in *Lawrence* the decision was premised on an assumption by both parties that the allegations were indeed false, whereas in *Roundtree* the parties were in disagreement about the falsity of the allegations. *Shorter*, 792 A.2d at 234–35 (reconciling the *Lawrence* and *Roundtree* decisions).

The facts of this case are squarely outside the realm of *Roundtree*. In the case before us, the significance of the prior allegation does not rise and fall on the truth or falsity of the allegation. Rather, its arguable significance lies in the improbability of the same kind of injury having been inflicted on the child's body at the same location by two different men. In other words, the appellant's argument is that the earlier incident involving the grandmother's boyfriend gave T.D. a scenario, retrieved from memory, from which to falsify an accusation that another adult had given her a hickey in the same place. As defense counsel argued during oral arguments, if this were a signature crime being introduced as evidence against the defendant it would be admissible to establish a probability. Similarly, here, the striking resemblance between the two incidents leans in favor of admissibility to challenge T.D.'s credibility. Based on this reasoning, we think there was a sufficient proffer to warrant, at a minimum, some degree of cross-examination into the facts and circumstances of the prior incident with T.D.'s grandmother's boyfriend.

■ We think that appellant's second contention that T.D. was biased because of her motive to evoke the same caring reaction she got from her mother after she

made the first allegation of sexual misconduct also warranted further inquiry through cross-examination. The trial court precluded almost all questioning related to this theory because she believed that an inference that T.D. might be motivated to fabricate claims of sexual abuse to get her mother's attention was too psychologically complex to be made without expert testimony.[2] We do not think such an inference was beyond the ability of a fact finder to reasonably draw without expert testimony. We think evidence and argument that since a child had received special attention and affection from her mother upon reporting identical mistreatment in the past, she had an incentive to falsify events on the present occasion to receive a similar gratifying response could fairly be entrusted to the fact finder. Moreover, contrary to the government's assertion, the earlier incident that allegedly aroused the mother's special show of affection was not unduly remote, because the defense proffered that in a recorded interview between T.D. and the Child Advocacy Center at around the time the child was accusing appellant, she recalled her earlier report of the similar assault and the response it evoked in her mother—implying that it was still vivid in her memory and thus an arguable motivator of her present accusations.

This proffer was sufficient to imply that the prior incident was still vivid in T.D.'s mind and thus, an arguable motivator of her present accusations. The foundational requirement necessary to support a line of questioning into bias is a "fairly lenient" one, particularly in criminal cases where cross-examination is typically exploratory rather than accusatory. *Clayborne*, 751 A.2d at 963 (citation omitted). The discus-

sion between defense counsel and the trial court did not focus, as our cases have indicated, on whether counsel made a sufficient proffer to support a good faith basis for their bias theory. *See Brown v. United States*, 683 A.2d 118, 125, 127 (D.C. 1996) (holding that "in the absence of [ ] a factual foundation ... there must be a well reasoned suspicion" and that a remand was warranted where the colloquy between the trial judge and defense counsel did not focus on whether there was a sufficient proffer "to support a genuine belief that the witness had a motive to lie") (internal quotations omitted).

In this case the trial court prevented inquiry into the possibility of a motive for bias. When defense counsel attempted to ask T.D. about the prior incident, the government objected and the trial court sustained the objection. Where defense counsel attempted to solicit information about the relationship T.D. had with her mother, the trial court continued to bar the line of questioning. Appellee argues that defense counsel did not ask T.D. whether she fabricated the story against appellant to get attention from her mother, even though the trial court stated that it would permit it. While this is true, even if defense counsel had asked T.D. if she had fabricated the charges, it would not have had the same effect as permitting questions about the prior charges to corroborate the defense's bias theory. The trial court's disallowance of any inquiry into appellant's bias theory prevented the appellant from exercising his Sixth Amendment right to confrontation. *See Brown*, 683 A.2d at 126.

Whether appellant's bias theory was based on facts or "well-reasoned suspicion" could not be determined without some degree of inquiry. *Id.* at 124–25. In fact,

2. The trial court concluded that there was an insufficient "nexus" between the two incidents to support such an inference.

T.D. testified that while she did not want to live with her mother, she wanted her mother to *want her* to live with her. This statement alone tends to support appellant's bias theory and warrants further inquiry through cross-examination of T.D. Failure to allow cross-examination on the subject of T.D.'s prior sexual allegation to support defense's bias theory, violated appellant's Sixth Amendment rights.

■ Appellant's second challenge on appeal arises from the trial court's exclusion of cross-examination and evidence about three prior claims T.D. made regarding her abuse by adults or the source of marks on her body that were allegedly later determined to be false. Appellant first notes an incident where T.D. falsely told school officials that Angel D. had inflicted the bruises that officials observed on her. Another incident involved Melodie S., a woman who became T.D.'s foster mother after she left Angel's care. There, she falsely told Melodie S. that a cat had caused "passion marks" on her body, but then later admitted a boy had given them to her. Finally, appellant describes an incident where T.D. told Melodie S. that her godfather had bitten her on the neck, but when confronted about the truth, she conceded that it was false. The trial court denied admission of these prior incidents as evidence of T.D.'s lack of credibility, deeming them irrelevant to T.D.'s veracity.

■ The trial court excluded evidence of the prior false allegations on the ground that they were not sufficiently similar to the current incident to be probative. Particularly, the trial court noted "a hickey and a bruise . . . they may look like the same thing, but their origins are different." Based on that distinction, the trial court held that the evidence of prior allegations was not probative of the current incident. We disagree. Contrary to the government's assertion, there is nothing in our case law to suggest that prior allegations must be factually similar to the issue on trial to be admissible. *See Shorter, supra,* 792 A.2d at 229–31 (finding that the trial court erred in preventing even limited inquiry where appellant sought to cross-examine complainant about three allegedly false prior sexual abuse accusations she made against appellant). The use of false prior allegations is intended to call the witness' veracity into question by showing that they have lied in the past—not to show what they lied about, though lying about a similar matter would bolster the point.[3] *See, e.g., Roundtree, supra,* 581 A.2d at 321. Appellant should have been permitted to question T.D. about her prior false allegations to challenge her veracity.

■ To defeat appellant's claim of a Sixth Amendment Confrontation Clause violation the government must demonstrate that any error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). To demonstrate that the error was harmless beyond a reasonable doubt, the prosecution must show that "(1) appellant would have been convicted without the witness's testimony, or (2) the restricted line of questioning would not have weakened the impact of the witness's testimony." *Jones,* 853 A.2d at 153 (citation omitted). There are many factors to consider in determining whether the error was harmless including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumula-

---

**3.** The record does not reflect that the government disputed the falsity of these prior allegations. As such, it cannot now argue that the allegations were true where appellant cannot go back in time to recreate the record with additional proffers to show the falsity of the allegations.

tive, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

T.D. was the government's key witness, without whom Mr. Obiazor would not have been convicted. T.D.'s credibility might have been undermined had the defense been permitted to pursue the theory that T.D.'s allegation against appellant was similar to her allegation against her grandmother's boyfriend because she realized from her previous experience that making such an allegation would be a way to evoke the attention and affection she sought from her mother. Additionally, the defense should have been allowed to argue that the remarkable and unusual similarities of the two allegations cast further doubt on the veracity of the allegation against appellant. Similarly, evidence that T.D. made false sexual allegations in the past would have weakened the impact of T.D.'s testimony. Thus, because we conclude that it was error to bar this evidence and that the error contributed to the verdict, it was not harmless error. We therefore reverse Mr. Obiazor's convictions and remand the case to the trial court for a new trial.

*So ordered.*