**Robert GARIBAY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11–CM–482.**

District of Columbia Court of Appeals.

Argued Nov. 1, 2012.

Decided July 25, 2013.

Christine A. Monta, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Kristina L. Ament, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and Elizabeth Trosman and Jeffrey Cook, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and THOMPSON, Associate Judges, and TERRY, Senior Judge.

GLICKMAN, Associate Judge:

Appellant Garibay was convicted in a bench trial of misdemeanor sexual abuse of a minor[1] based on the testimony of the complainant and a detective who had interviewed her a week after the alleged abuse. Appellant now argues that, in finding him guilty, the trial court improperly relied on the substance of the complainant's report to the detective, as shown by the fact that the court attached significance to the detective's description at trial of the complainant's demeanor during her interview. In addition, appellant contends the court infringed his Sixth Amendment right of confrontation by precluding him from questioning the complainant about a previous allegation of sexual assault that he had a good faith basis to believe might have been false. While we are not persuaded by appellant's first argument, we remand with instructions to allow him the opportunity he seeks to conduct a limited voir dire examination of the complainant to probe the veracity of her prior allegation.

## I.

### A.

B.F., the complaining witness, testified at trial that appellant, who is her mother's uncle, sexually assaulted her when he was visiting her apartment one evening in the last week of May 2010. B.F. was twelve years old at the time. Her mother had gone to bed and B.F. was in the living room with appellant when it happened. According to B.F., as she was putting a movie in the DVD player, appellant came up behind her, put his arms around her, and slipped his hand into her pajamas and touched her vagina. B.F. tried to push him away, but he did not move. Eventually, though, he removed his hand and abruptly left the apartment. Later that week, when appellant was again at the apartment, he came up behind B.F. as she was washing dishes in the kitchen and whispered in her ear that she looked "sexy."

B.F. testified that she had been afraid to report appellant's behavior. The following week, however, she told a friend that her uncle had molested her. At her friend's urging, B.F. informed a school counselor, who called her mother, and the police were notified.

On June 3, B.F. was interviewed by Detective Darryn Robinson. At trial, Robinson briefly summarized what B.F. reported to him: that in the first incident, appellant "walked up behind her and he stuck his hands inside of her pants in the front of her pants feeling her vagina," and in the second incident he "walk[ed] up to her whispering in her ear telling her that she looked sexy." When B.F. told him these things, the detective testified, she was "upset" and "in shock," not crying or "showing any emotion," but "broken down" and "defeated." B.F. told Robinson she had not reported the sexual assault incident earlier because she "didn't know how to tell anybody." Robinson understood B.F. to mean she was embarrassed and scared.

### B.

During pretrial discovery in this case, appellant learned that B.F. previously had made a complaint of inappropriate sexual touching against her teenage cousin. Appellant requested the opportunity to conduct a pretrial voir dire examination of

---

1. D.C.Code § 22–3010.01 (2013 Repl.).

B.F. or her mother to determine whether this complaint had been investigated and whether it was true or false. The court permitted appellant to voir dire B.F.'s mother, D.F.

D.F. testified that she had not talked with B.F. about the incident and had no first-hand knowledge of it, but she had been informed by a school counselor that her daughter, after participating in a "good touch-bad touch" class, had said her cousin had touched her "inappropriately" when she had visited him in Kansas on her summer vacation. D.F. and the counselor agreed that there was no need to inform the authorities in Kansas, because the incident had taken place between two children and B.F. was back in the District of Columbia and therefore out of "harm's way." A child protective services investigator notified the Wichita Police, though, and an officer called D.F. The officer told her that she and her daughter would have to return to Kansas for the investigation to proceed. D.F. could not afford that trip, so, she testified, the police "couldn't do anything about" the alleged incident. Based on D.F.'s testimony, the court saw no need for a pretrial voir dire examination of B.F.

Appellant subsequently obtained a report on the matter prepared by the Kansas Department of Social and Rehabilitation Services ("SRS"). The SRS report stated that the Department had "completed an investigation" and found B.F.'s allegation to be "unsubstantiated" because "the facts or circumstances do not provide clear and convincing evidence" of "sexual abuse" under Kansas law. In light of this report, appellant moved for leave to voir dire B.F. about her complaint against her cousin, but the court denied that request

and ruled that appellant could explore the subject when he cross-examined B.F. at trial.

When that time came, B.F. acknowledged having told her school counselor that "someone" in Kansas "had touched" her when she was nine years old.[2] However, B.F. said, the incident in Kansas "was not as serious as what happened now." Appellant then attempted to ask B.F. whether she knew "what happened with the investigation in Kansas," but the court sustained the government's objection to the question. Appellant explained he wanted to inquire into whether B.F. had made "a false prior claim" of sexual abuse that "was unsubstantiated because she made it up and it just did not happen." In opposition, the government argued that the only reason B.F.'s sexual abuse claim was unsubstantiated was that she and her mother did not return to Kansas to meet with the police. Appellant responded that, although this was D.F.'s testimony, there was nothing to that effect in the official report.[3] The trial court sustained the government's objection, ruling that appellant lacked a good faith basis to believe that the sexual abuse allegation B.F. had made against her cousin was false.

### C.

At the trial's conclusion, the court announced its findings and verdict. Despite what it called the "great effort" made by the defense to impeach B.F. and undermine her credibility, the court concluded that "[s]he did not contradict herself where it really counts." And "considering her total demeanor," the court found it "difficult not to believe her." The court refer-

---

2. Appellant elicited this information to impeach B.F.'s statement to Detective Robinson that she did not know how to report what appellant had done to her.

3. The report, we note, concerned an investigation purportedly conducted by the State Department of Social and Rehabilitation Services, not the Wichita Police.

enced B.F.'s demeanor both at trial, where she became emotional and "broke down" on the witness stand, and in her interview with Detective Robinson. "Once you look at that," the court reiterated, "then it is easy to accept her testimony."

## II.

Under the so-called "report-of-rape" rule, B.F.'s report to Detective Robinson that she was the victim of a sexual assault by appellant was admissible at trial "not for the truth of the matter asserted, but merely for the fact that the statement was made."[4] Appellant argues that the trial court ignored this limitation when it relied on B.F.'s demeanor during her interview with the detective, because her demeanor on that occasion was relevant only to whether she was being truthful *then.*

We think appellant takes too narrow a view of the relevance of B.F.'s demeanor as evidence that appellant molested her. "It is the general rule that testimony of a witness as to the mental or emotional state of another, deduced from observation, is admissible" when relevant.[5] Such demeanor evidence is not hearsay, but rather a fact-based observation by the witness on which the observing witness can be cross-examined.[6] So, for instance, we have upheld the admission of testimony about the complainant's changed demeanor after an alleged rape—including her fearfulness around men and her "solemn" look when the topic of sexual assaults was discussed in her presence—offered as relevant to the contested issue of consent.[7] Such demeanor evidence also may be relevant when, as in this case, the contested issue is whether the alleged sexual assault happened at all.[8]

If a complainant's demeanor when the topic of sexual assaults is discussed in her hearing may be relevant and admissible, we see no reason why her demeanor at the time she makes her report to the police may not also be relevant and admissible. Contrary to appellant's argument, the relevance of the complainant's demeanor does not depend on the truthfulness of her report—the trier of fact is not required to consider the report's truth to evaluate the probative value of the complainant's demeanor. Rather, the complainant's demeanor when discussing the subject is independent evidence that she was the victim of a sexual assault, just as

---

4.  *Battle v. United States,* 630 A.2d 211, 216–17 (D.C.1993) (internal quotation marks omitted); *see also In re L.C.,* 41 A.3d 1261, 1263 (D.C.2012) (holding that "the report-of-rape rule applies in bench trials to the same extent that it applies in jury trials").

5.  *Riley v. United States,* 291 A.2d 190, 193 (D.C.1972) (internal quotation marks and footnote omitted) (holding that trial court did not err by allowing arresting officers to testify, in petit larceny prosecution, as to emotional condition of the unavailable complainant following her discovery of the theft of her purse).

6.  *See Rogers v. United States,* 483 A.2d 277, 290–91 (D.C.1984); *Cole v. United States,* 327 F.2d 360, 361 (9th Cir.1964) (holding that

evidence that a teller was shaken and upset after a robbery was "obviously" not hearsay since the teller's pale complexion and shaking were not "for the purpose of communicating a message ...."). *Cf.* Fed.R.Evid. 801(a) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.").

7.  *Street v. United States,* 602 A.2d 141, 143 (D.C.1992).

8.  *See, e.g., Parker v. State,* 156 Md.App. 252, 846 A.2d 485, 496 (Md.Ct.Spec.App.2004) ("[E]vidence of a victim's conduct following a sexual assault has been permitted in other states to demonstrate that the attack did occur or to show a lack of consent.") (collecting cases).

a physical injury might constitute such evidence. We assumed as much in *Battle*, where we noted that the admission of testimony describing the "complainant's crying and appearing upset" when she made her report was not challenged in that case.[9]

In the present case, Detective Robinson's description of B.F.'s demeanor conveyed no out-of-court statements by her, and we have no reason to think the trial court confused its proper consideration of B.F.'s demeanor as evidence corroborating her in-court testimony with an improper reliance on the substance of her report to the detective.[10] We therefore reject appellant's first claim of error.

### III.

■ Invoking his Sixth Amendment right of confrontation, appellant argues that he is entitled to a remand for an opportunity to voir dire B.F. about her prior allegation of sexual assault against her cousin in Kansas to determine whether that allegation was false. The issue turns on whether appellant proffered a sufficient factual basis for such an inquiry.[11] We conclude that he did.

■■ Previous allegations of wrongdoing made by a complaining witness may be probative of the witness's credibility, and hence relevant, if (and only if) the allegations were fabricated.[12] Accordingly, we have held that where a defendant seeks to impeach a witness with evidence that the witness previously made a false claim, "the confrontation clause mandates that the trial court give [the] defendant leave to cross-examine about the prior claim only where it is 'shown convincingly' that the prior claim is false."[13] If the defendant's factual proffer falls short of a convincing showing of falsity, but nonetheless shows a "good faith basis" to question the veracity of the prior accusation, the court must allow the defendant an opportunity to make the necessary showing by permitting him to conduct "at least a limited voir dire examination" of the witness.[14]

Appellant concedes that his factual proffer did not "show convincingly" that B.F.'s accusation against her cousin was false. The question is whether it sufficed to show a good faith basis for further, limited inquiry. Appellant relied on the Kansas SRS report's conclusion that the allegation of sexual abuse was "unsubstantiated." This conclusion is ambiguous. The record does not disclose what investigation the Kansas authorities performed, and it is unclear whether the conclusion actually reflects an evidence-based judgment on the veracity of B.F.'s accusation or, as the government surmised, merely the investigators' inability to evaluate the accusation at all without having interviewed B.F. in Kansas.

■ We should not have to speculate about this. Given the importance we at-

---

9. *Battle*, 630 A.2d at 222 n. 16 (citing *Street*, 602 A.2d at 141).

10. We note, as appellant concedes, that the court was well aware of the report-of-rape rule.

11. We review the trial court's ruling on the adequacy of appellant's proffer for abuse of discretion. *See Brown v. United States*, 683 A.2d 118, 125 (D.C.1996).

12. *Roundtree v. United States*, 581 A.2d 315, 321 (D.C.1990).

13. *Id.*

14. *Shorter v. United States*, 792 A.2d 228, 236 (D.C.2001). In a jury trial, the voir dire examination should be conducted outside the jury's presence, *id.* at 235, and it often may be most efficient (even in a non-jury proceeding) to hold the threshold inquiry into falsity prior to trial.

tach to a defendant's Sixth Amendment right of confrontation, and the ease with which the matter can be settled without disruption of the trial or harassment of the witness, the showing necessary to justify a limited voir dire inquiry superintended by the trial judge should not be onerous. In the somewhat analogous case of cross-examination for bias, we have said that "[t]he requirement of a good faith basis [is] flexible as well as lenient." [15] The defendant need only have "a reasonable factual foundation" or, lacking that, at least "a 'well-reasoned suspicion'" that the witness's previous allegation was a fabrication.[16] And while "[t]he more pointed and directly accusatory the examiner's question, the stricter the foundational requirement becomes, ... a very slight basis is enough to support nonaccusatory questions on cross-examination." [17] The threshold for inquiry should be no higher where limited exploratory voir dire is sought to determine whether the witness fabricated an accusation.

We conclude that the good faith standard was met here, where appellant informed the court that an official investigation had concluded with a determination that B.F.'s prior allegation of sexual assault was unsubstantiated, and the issue of B.F.'s veracity was not settled by the voir dire examination of B.F.'s mother (who had no personal knowledge of, and had not even spoken with her daughter about, the allegation). It would have been a simple matter in this non-jury trial to allow appellant to ask B.F. a few brief, nonaccusatory questions to ascertain the nature of her accusation against her cousin, the extent and outcome of the investigation (to B.F.'s knowledge), and whether the accusation was true or false. It may seem unlikely that B.F. would admit to having falsely accused her cousin, or that she would reveal information establishing convincingly that she did so, but appellant was entitled to find out. The court would, of course, have had ample authority and discretion to control the cross-examination to protect B.F. from harassment and to keep the questioning relevant and within reasonable bounds.[18]

We are not prepared to say that the error in precluding appellant from putting such questions to B.F. was harmless. "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." [19] Our ability to say this in any given case "depends upon a host of factors," including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the

---

15. *Clayborne v. United States*, 751 A.2d 956, 963 (D.C.2000).

16. *Id.* (quoting *Scull v. United States*, 564 A.2d 1161, 1164 (D.C.1989)); *see also Brown*, 683 A.2d at 125.

17. *Clayborne*, 751 A.2d at 963 (internal quotation marks omitted).

18. *Shorter*, 792 A.2d at 233.

19. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). *See also Jones v. United States*, 853 A.2d 146, 154 (D.C.2004) ("To show harmlessness beyond a reasonable doubt, the government must show that (1) appellant would have been convicted without the witness's testimony, or (2) the restricted line of questioning would not have weakened the impact of the witness's testimony.").

prosecution's case."[20] Here, the case against appellant turned entirely on B.F.'s credibility, and if we "assum[e] that the damaging potential"[21] of the proposed cross-examination regarding her fabrication of a prior charge of sexual abuse would have been realized, we cannot say beyond a reasonable doubt that the trier of fact still would have credited B.F.'s current accusation of sexual abuse against appellant.

Accordingly, as in *Shorter*,[22] we remand the case for the trial court to permit a limited voir dire examination of B.F. concerning the veracity of her sexual assault allegation against her cousin. If the court concludes that B.F.'s answers convincingly show that the allegation was false, then the court must vacate appellant's conviction and order a new trial.[23] Otherwise, appellant's conviction will stand, subject to his right to appeal the court's ruling.[24]

*So ordered.*

---

**20.** *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431.

