NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2012-268


THE STATE OF NEW HAMPSHIRE

v.

DENNIS SULLOWAY

Argued:  June 27, 2013
Opinion Issued:  March 20, 2014


Michael A. Delaney, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J.  The defendant, Dennis Sulloway, appeals his conviction, following a jury trial in Superior Court (McNamara, J.), of pattern aggravated felonious sexual assault.  See RSA 632-A:2, III (2007).  We affirm.

The record supports the following facts.  The defendant was charged with aggravated felonious sexual assault in an indictment alleging, in part, that on or between September 1, 2009, and January 2, 2011, he "engaged in a pattern [of] sexual assault" with a male juvenile under the age of thirteen by "intentionally touching the male juvenile's genitalia with his hand on more

than one occasion." Prior to trial, the defendant filed motions in limine seeking to exclude, among other things: (1) the testimony of Dr. Kent Hymel, the victim's examining physician, because, among other things, it would not be helpful to the jury; and (2) testimony by the victim's stepfather regarding a disclosure by the victim, on the ground that such testimony would constitute inadmissible hearsay.

The trial court denied both motions. In its written order, the court found, with regard to the testimony of Hymel, that

> [t]he State seeks only to admit evidence that a normal exam of a child who alleges sexual abuse as a result of touching "neither confirms nor refutes the possibility of sexual abuse." The testimony is admissible because it will avoid the jury speculating on whether medical evidence exists which was not produced to it.

The court also found that the victim's stepfather would "testify that the [victim] disclosed to him the fact that the defendant assaulted him and he observed that the [victim] visibly was upset when he did so." The court ruled that the testimony was relevant and not hearsay.

On appeal, the defendant argues that the trial court erred in admitting the testimony of Hymel and the stepfather. "Generally, we accord considerable deference to a trial court's evidentiary rulings and will only intervene when they demonstrate an unsustainable exercise of discretion. Unless a party establishes that such a ruling was clearly untenable or unreasonable to the prejudice of the party's case, it will not be disturbed." State v. Belton, 150 N.H. 741, 743 (2004) (citation omitted). We will address each challenge in turn.

The defendant challenges the admission of Hymel's testimony on grounds that it was irrelevant, unhelpful to the jury, and prejudicial. He first characterizes the trial court's rationale as finding that Hymel's testimony was "necessary to prevent the jury from harboring a misimpression that the absence of physical evidence was significant." He then asserts that this rationale is erroneous because, "while otherwise inadmissible evidence may become admissible to rebut a misimpression under the doctrine of specific contradiction, that doctrine requires that the misimpression be created by the opposing party." Here, he asserts, it was the State, rather than the defendant, that introduced evidence that the victim had been examined by a doctor.

We disagree with the defendant's characterization of the trial court's ruling. The court did not admit the doctor's testimony to rebut a misimpression created by either party, but rather to "avoid the jury speculating on whether medical evidence exists which was not produced to it." We need not, therefore, address the defendant's arguments based upon the doctrine of specific contradiction.

2

The defendant next contests that any risk of jury speculation existed. He argues that "the misimpression that the State claimed it needed to rebut – that touching would produce physical evidence – defies common sense." At the hearing, the State argued:

> I think that as much as we would like to think there would not be any speculation on the part of the jury as to what could potentially show that a child has been touched, we're talking about a pattern allegation over a long period of time, alleging touching of the genitalia.

> And I think that the climate that we live in now, a lot of jurors see things on TV; a lot of jurors hear things in the community and have a higher expectation that there may be the possibility of obtaining some sort of physical evidence in [a] case where we would normally have thought that might not be the case.

The court summarized, "This is a case about credibility. [The State] want[s] to say there's no [scientific] test that can show whether or not this happened." It then reasoned that "there is relevance because it avoids speculation and I don't see any harm to the Defendant in telling the jury that there is no medical test." Under our deferential standard of review, we cannot say that the trial court unsustainably exercised its discretion by allowing the testimony for the limited purpose it identified.

The defendant goes on, however, to argue that the trial court "erred in permitting the State to elicit Hymel's further testimony about the [physical] examination in this case." Prior to Hymel's testimony, the defendant sought a ruling "that there be no questions allowed about the exam . . . [that was actually performed on the victim] because that would mislead the jury" given that the State's premise for offering the testimony was to inform the jury "that there is no physical test to be done to support a finding of touching." The State assured the court that "the doctor will be very clear that while there is no physical test that can be done as a diagnostic tool . . . [a] test is done, [and] there are reasons for doing it. He'll explain what [the victim's] demeanor was like during that test and the steps that he took." The court overruled the defendant's objection, finding the evidence "all relevant."

On appeal, the defendant argues that, given Hymel's testimony that touching would not "cause any tissue damage, or changes" that he would expect to observe in a physical examination, his testimony about the examination of the victim in this case was irrelevant and not helpful to the jury. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence." N.H. R. Ev. 401.  Expert testimony is admissible under New Hampshire Rule of Evidence 702 "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." N.H. R. Ev. 702.

Hymel's testimony about the actual physical examination of the victim was brief.  He testified that he followed the usual procedure that he had previously described in general.  When asked about his physical findings with respect to the victim, Hymel's entire response was:  "He had a normal exam.  A completely normal exam.  His general exam and the genital and anal exam were all just fine.  No abnormalities.  No signs of penetrating trauma.  No lesions or sores concerning for a sexually transmitted infection."

Even if Hymel's testimony regarding the victim's normal examination findings tended neither to disprove nor prove the alleged touching, and thus could arguably have been irrelevant and not helpful to the jury, we fail to see how its admission prejudiced the defendant.  Under our unsustainable exercise of discretion standard, we will not disturb a trial court's evidentiary ruling "[u]nless a party establishes that such a ruling was clearly untenable or unreasonable to the prejudice of the party's case." Belton, 150 N.H. at 743; cf. United States v. Mejia, 909 F.2d 242, 246 (7th Cir. 1990) ("It is not reversible error to admit irrelevant details that have no probative value but do not prejudice a defendant.").  In addition, Hymel's testimony regarding the victim's physical examination laid a foundation for his testimony about the victim's demeanor, the relevance of which we address below.

Indeed, it appears that the defendant's real issue with Hymel's testimony relates to "additional testimony" that the prosecutor "elicited" after the doctor described his physical examination findings.  As with the examination findings themselves, the defendant challenges this additional testimony as irrelevant and not helpful to the jury.

The prosecutor immediately followed Hymel's answer regarding his examination findings with the following question:

Q.  Okay.  And was this surprising to you?

A.  Not at all.  For the reasons I've already discussed and in addition because the information I had, the reason why he had been referred to us was that he had been touched.  There was no additional information about penetrating trauma.  And it seems intuitively obvious to me that if he was just touched I would never be able to tell that just by looking on an exam.

4

So the main purpose -- so an additional purpose of our exam is to examine for the possibility that something happened more than what has been disclosed, but I found nothing to suggest that he had experienced penetrating trauma.

The defendant asserts that "[f]ar from the 'neutral explanation' the prosecutor assured the court" that Hymel would provide, "the State elicited Hymel's opinion in a manner which suggested that he personally believed that [the victim] had been abused." Thus, in essence, the defendant is claiming that the doctor's testimony exceeded the scope allowed under the trial court's ruling on the defendant's motion in limine.

The defendant did not, however, object to, or move to strike, any of this additional testimony as it was elicited at trial; nor did he request a limiting instruction. "In general, a defendant must make a specific and contemporaneous objection during trial to preserve an issue for appellate review. A motion in limine is sufficient to preserve an issue for appeal without an objection at trial if the trial court definitively rules on the issue before trial." State v. Pepin, 156 N.H. 269, 275 (2007) (citation omitted). Here, the defendant's motion in limine preserved his objection with respect to the issues ruled upon therein, but the doctor's alleged deviation from that ruling raised a new issue not brought to the trial court's attention. Cf. People v. Diaz, 930 N.E.2d 264, 269-70 (N.Y. 2010) (finding that when "defendant failed to make any objections during [psychiatric expert's] testimony, even when the testimony exceeded the scope of the court's ruling [on defendant's motion in limine,] . . . many of the troubling aspects of [the expert's] testimony . . . are unpreserved for review"). Accordingly, we decline to address the defendant's arguments with respect to those additional portions of Hymel's testimony. Cf. Pepin, 156 N.H. at 275 (declining to address on appeal argument that 911 tape was inadmissible under New Hampshire Rule of Evidence 403 where defendant's motion in limine was based on different ground and Rule 403 was neither mentioned in motion in limine nor argued to the trial court).

The defendant also challenges "Hymel's testimony about his actual motivation for examining [the victim]," which, the defendant asserts, was "to assure [the victim] that his body was normal." "Such an assurance," the defendant argues, "would only be necessary if [the victim] was, in fact, abused."

We disagree with the defendant's characterization of Hymel's testimony. During his general description of his practice and procedure, the doctor testified that in performing a medical examination when there has been an allegation of sexual abuse, "most of the time the value of what we do, and therefore the real purpose of what we do is to verify . . . [a]nd then reassure the child that their body is normal" because "[s]ome children I am convinced harbor a belief if they've been sexually abused that people can tell." (Emphasis added.) Hymel's

5

testimony did not indicate an "actual motivation" for examining this particular child and expressed no opinion or personal belief as to whether this child had been abused.

The defendant next challenges Hymel's testimony as to the victim's demeanor. Specifically, the defendant challenges the admission of the doctor's response to the following question by the State:

> Q. Can you describe what [the victim's] demeanor was like when you dealt with him?
>
> MS. SIRANIAN: Objection, it's vouching for the credibility of the witness.
>
> THE COURT: [O]verruled.
>
> THE WITNESS: I did include a statement in my report, which was – which is atypical for me. I don't usually include. Is I have one sentence. It says, he appeared very withdrawn and/or scared during today's exam. And actually, I think that I'm pretty good, my team is pretty good at putting kids at ease, and distracting them, and making it fun and nonthreatening. So rereading my report that is somewhat unique, fairly unique. I usually don't include a sentence like that.
>
> And so it suggests that I didn't succeed in the usual degree. Our team did not succeed in the usual degree to put this child completely at ease.

The defendant argues that "[t]he implication of this testimony was that [the victim's] reaction to the examination was corroborative of abuse." He argues further that, given Hymel's "extensive qualifications[,] . . . it was unlikely that the jury would have disregarded . . . the implication that he found [the victim's] demeanor during the examination significant of abuse." The State counters that "Hymel never stated or implied that [the victim's] demeanor showed that he had been abused" and notes that "[o]ther courts have had little hesitation in holding that demeanor evidence is always admissible to corroborate a victim's testimony and to rebut a charge of fabrication."

Having reviewed the testimony, we agree that Hymel conveyed no opinion as to whether or not the victim in this case had been abused. The doctor noted that it was "atypical" and "fairly unique" that he would have included a comment about a patient's demeanor in his notes, but made no suggestion that he found the victim's demeanor corroborative of abuse. Cf. State v. Oscarson, 845 A.2d 337, 356 (Vt. 2004) (doctor "did not 'clearly and impermissibly bolster the

6

credibility'" of child victims where he "offered no opinion as to whether [they] were telling the truth about being sexually abused by defendant" and his description of one victim's "demeanor was not tantamount to vouching for [the victim's] credibility").

The defendant correctly notes that the State summarized Hymel's demeanor testimony during its closing, but a review of the defendant's opening statement and closing argument demonstrates why the evidence was relevant. In his opening, the defendant contended that he was "not guilty because [the victim] made this up . . . to get attention." Specifically, the defendant elaborated in his closing argument that the victim was a middle child and a loner who "got left behind a lot" and who "made up a story to get the attention of his family."

The State, in its closing, questioned what motive the victim would have for making up such a story, given the unchallenged evidence that the defendant was like a grandfather to the victim and gave him "all this wonderful attention, one-on-one." The State juxtaposed that "wonderful attention" against the victim's post-disclosure experiences, testing the plausibility of the defendant's theory in light of, among other things, the victim's demeanor as observed by the jury and as testified to by the State's witnesses. The State then argued to the jury that the defendant's theory "makes no sense" because "[n]o child in their right mind would trade" the positive attention of a grandfather figure for the negative experiences that the victim had had since disclosing the abuse.

On appeal, the State argues that the challenged demeanor evidence was admissible to counter a defense of fabrication by the victim. We agree.

> Evidence of a victim's state of mind or behavior following a crime has long been admissible if relevant to a contested issue in a case. Demeanor evidence may be of particular importance in a case such as this, where the trial devolves to a contest of credibility concerning whether the charged offense . . . occurred.

Com. v. Starkweather, 950 N.E.2d 461, 469, 470 (Mass. App. Ct. 2011) (quotation and citation omitted) (finding police officer's "firsthand observations of the victim's demeanor in the emergency room, and physical and emotional state of mind in the wake of the sexual attack, played an integral role in assessing credibility"). We conclude that the demeanor testimony by Hymel was relevant to respond to the defendant's theory of the victim's motive for fabricating allegations against him. Moreover, the defendant's advancement of that theory at trial undermines his claim of prejudicial error. See Belton, 150 N.H. at 743 (prejudice required to show unsustainable exercise of discretion in evidentiary ruling); State v. Burney, 954 A.2d 793, 805 (Conn. 2008) (concluding that "[b]ecause defense counsel opened the door to the demeanor testimony at trial by attacking the victim's credibility . . ., the defendant's claim that he was unfairly prejudiced by

7

the subsequent introduction of the testimony in response is less than persuasive").

The defendant next challenges the admission of demeanor testimony given by the victim's stepfather. The defendant had moved in limine to exclude that testimony as hearsay and objected at trial on relevance grounds. The trial court ruled against him on both grounds and he now reasserts both grounds on appeal.

At trial, the victim's stepfather testified that, on January 2, 2011, the victim "told me he had something to tell me," that he looked "[s]cared" and "nervous" when he said that, but looked "[r]eally relieved" after he shared the information. The stepfather further testified that he felt "[a]ngry" and "disgusted" when he heard what the victim told him, that he related the information to his wife, and that he thought she called the police. The stepfather also testified that he did not confront the defendant "[b]ecause it would have been a bad scene." The stepfather never testified as to what the victim told him.

On appeal, the defendant first contends that the stepfather's testimony was hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.H. R. Ev. 801(c). A statement, in turn, is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." N.H. R. Ev. 801(a). The defendant argues that the evidence revealed in the stepfather's testimony concerning the child's disclosure to him constituted a statement for hearsay purposes because, "[w]hile the State did not elicit direct evidence of the content of the statement, it clearly elicited circumstantial evidence that [the victim] claimed that [the defendant] had abused him."

Even assuming that the child's disclosure constitutes a statement under Rule 801, we conclude that it is not hearsay because we agree with the trial court's pretrial ruling that

> [t]he child's statement is not for the truth of the matter and is plainly relevant, because the State intends to introduce evidence that the child was upset when he made the disclosure. [The victim's stepfather] can be cross examined on what he observed and what he saw in the alleged victim's demeanor. His observations are not hearsay. Thus, the testimony is admissible.

"If a statement is not offered to prove its truth, but is offered for some other reason, such as to prove simply that the statement was made, it is not hearsay." C. Douglas, New Hampshire Evidence Manual § 801.02[5], at VIII-7 (2013 ed.).

Here, the State did not introduce evidence of the victim's statement to his stepfather in order to prove the statement's truth, but rather to provide a foundation for the evidence of the victim's demeanor.  The portion of the stepfather's testimony offered as proof of the alleged crime was not the victim's disclosure, but his demeanor; thus, the evidence of the victim's statement to his stepfather – the content of which was not disclosed – was offered "to prove simply that [a] statement was made."  Id.

In addition, the demeanor evidence was not evidence of a statement because it was neither assertive nor intended as a communication.  "Although nonverbal conduct may be considered hearsay if it is assertive and intended as a communication[,] conduct that is nonassertive is not considered a statement for hearsay purposes."  Burney, 954 A.2d at 802 (citation omitted).  Accordingly, courts have held that testimony regarding a sexual assault victim's demeanor is not hearsay.  See State v. Tibor, 738 N.W.2d 492, 499 (N.D. 2007) (holding child sexual abuse victim's "nonverbal conduct during the interview [with a social worker and forensic interviewer] was offered as evidence about [the victim's] demeanor and attitude" and was therefore "admissible, non-hearsay evidence"); Com. v. Patosky, 656 A.2d 499, 506 (Pa. Super. Ct. 1995) (holding "victim's nervous demeanor when reporting" indecent assault by a coworker to her supervisor "was not a statement as it was not intended as a communication").  We find particularly instructive the observation of the District of Columbia Court of Appeals addressing both hearsay and relevance concerns regarding demeanor evidence:

> It is the general rule that testimony of a witness as to the mental or emotional state of another, deduced from observation, is admissible when relevant.  Such demeanor evidence is not hearsay, but rather a fact-based observation by the witness on which the observing witness can be cross-examined. . . .
>
>      . . . [T]he relevance of the complainant's demeanor does not depend on the truthfulness of [his or] her report [of sexual assault] – the trier of fact is not required to consider the report's truth to evaluate the probative value of the complainant's demeanor.  Rather, the complainant's demeanor when discussing the subject is independent evidence that [he or] she was the victim of a sexual assault, just as a physical injury might constitute such evidence.

Garibay v. United States, 72 A.3d 133, 137-38 (D.C. 2013) (quotation and footnotes omitted).

We conclude that the evidence elicited from the victim's stepfather about the victim's demeanor was not hearsay, and, in addition, we reject the defendant's argument that the stepfather's testimony was irrelevant.  See id.; see

also Burney, 954 A.2d at 805 ("There can be no question that the victim's emotional state when she made the complaint, as evidenced by her outward demeanor, was relevant to the ultimate question of whether a sexual assault occurred because it bore on her credibility."). Because we find the trial court's ruling neither untenable nor unreasonable, we need not address the defendant's arguments regarding prejudice. See Belton, 150 N.H. at 743.

Finally, the defendant challenges the stepfather's testimony that he felt "[a]ngry" and "disgusted" when the victim made the disclosure and that he did not confront the defendant "[b]ecause it would have been a bad scene." The defendant argues on appeal that this testimony constituted hearsay, was irrelevant, and was prejudicial. We conclude, for the reasons previously discussed, that this was not assertive conduct, and therefore was not hearsay. See Garibay, 72 A.3d at 137.

We decline to address the defendant's contention that this testimony was irrelevant and prejudicial because he failed to preserve the issue for our review. The defendant's motion in limine sought exclusion of testimony concerning the victim's disclosure solely on hearsay grounds. At the hearing on the motion, the State indicated that it was not seeking to introduce the content of the victim's disclosure, but, rather, wanted to elicit the circumstances under which it was made: "How the [victim] appeared to [the stepfather] at the time. How the child appeared afterwards. What [the stepfather] did as a result of it." This proffer, and the trial court's ruling on the motion in limine, make clear that the trial court considered, and ruled upon, only the admissibility of evidence of the victim's demeanor. When the prosecutor arguably exceeded the scope of the in limine ruling and inquired about the stepfather's reaction, it was incumbent upon the defendant to object in order to preserve the issue for our review. Cf. Pepin, 156 N.H. at 275. Because he failed to do so, we decline to consider the issue further.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.