NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2019-0653

THE STATE OF NEW HAMPSHIRE

v.

RICHARD SOULIA

Argued: January 27, 2021
Opinion Issued: May 5, 2021

Gordon J. MacDonald, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BASSETT, J. The defendant, Richard Soulia, appeals his convictions, following a jury trial, on three counts of aggravated felonious sexual assault. See RSA 632-A:2, I(a), II (2016). On appeal, the defendant argues that the Superior Court (Ruoff, J.) erred when it denied his motions to strike for cause three prospective jurors, in violation of his right to an impartial jury under the State and Federal Constitutions. He also argues that the trial court may have erred when it failed to disclose certain confidential records following in camera review of those records under the standard we recently clarified in State v. Girard, 173 N.H. 619, 627-29 (2020). Because we conclude that the trial court

sustainably exercised its discretion when it denied the defendant's motions to strike the jurors for cause and when it withheld certain confidential records, we affirm.

I.      Motions to Strike Jurors for Cause

The defendant first argues that the trial court violated his right to a fair and impartial jury under the State and Federal Constitutions when it denied his motions to strike three prospective jurors for cause. See N.H. CONST. pt. I, arts. 15, 21, 35; U.S. CONST. amends. VI, XIV. We first address his claim under the State Constitution and rely on federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). In addition, before discussing the specific facts relevant to each challenged juror, we set out the legal standards governing juror impartiality.

Part I, Article 35 of the New Hampshire Constitution provides, in relevant part, "It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." N.H. CONST. pt. I, art. 35. "This provision for judicial impartiality is applicable as well to jurors." State v. Tabaldi, 165 N.H. 306, 312 (2013) (quotation omitted). This constitutional provision therefore enshrines as "a fundamental precept of our system of justice that a defendant has the right to be tried by a fair and impartial jury." Id. (quotation omitted).

Generally, a juror is presumed to be impartial. Id. "A juror is considered impartial if the juror can lay aside her [or his] impression or opinion and render a verdict based on the evidence presented in court." Id. (quotation omitted). "When a juror's impartiality is questioned, however, the trial court has a duty to determine whether the juror is indifferent." Id. (quotation omitted); see also RSA 500-A:12, I (2010). "If it appears that any juror is not indifferent, [she or] he shall be set aside on that trial." RSA 500-A:12, II (2010).

The trial court's determination of a juror's impartiality "'is essentially one of credibility, and therefore largely one of demeanor.'" State v. Addison (Capital Murder), 165 N.H. 381, 447 (2013) (quoting Patton v. Yount, 467 U.S. 1025, 1038 (1984)). The determination "'is ordinarily influenced by a host of factors impossible to capture fully in the record — among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty.'" Id. (quoting Skilling v. United States, 561 U.S. 358, 386 (2010)). For these reasons, the trial court's impartiality determination "is entitled to special deference." Tabaldi, 165 N.H. at 312-13.

"Once the trial court on voir dire has made a determination as to whether a prospective juror is free from prejudice, it is then our duty on appeal to evaluate the voir dire testimony of the empanelled jury to determine whether an impartial jury was selected." State v. Town, 163 N.H. 790, 794 (2012) (citation omitted). "We will not disturb the trial court's ruling absent an unsustainable

2

exercise of discretion or a finding that the trial judge's decision was against the weight of the evidence." Id. "To show an unsustainable exercise of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." Id. at 795.

The defendant asserts, and the State agrees, that to prove prejudice in this context, he must show "that a biased juror actually sat on the jury." Addison, 165 N.H. at 450 (quotation omitted). Accordingly, we apply that standard here. Under this standard of review, the defendant argues that the trial court erred when it denied his motions to strike for cause three prospective jurors who later sat on the jury. We briefly recount the facts relevant to jury selection before addressing the defendant's arguments as to each challenged juror.

In November 2018, a grand jury indicted the defendant on four counts of aggravated felonious sexual assault, see RSA 632-A:2 (Supp. 2020), and one count of prostitution, see RSA 645:2, II(a) (2016). These charges arose from allegations made by a member of the defendant's extended family that the defendant sexually assaulted her on several occasions when she was a minor.

During jury selection, the court asked the entire pool of potential jurors the following questions, among others: (1) whether they knew any of the prospective witnesses; (2) whether they were in any way related to persons engaged in any occupation related to law enforcement; (3) whether they or any member of their family or anyone close to them had ever been a victim of sexual abuse, sexual assault, or attempted sexual assault; and (4) whether there was anything in their history or day-to-day experiences that prevented them from being fair and impartial towards an individual accused of sexually assaulting a child. The court instructed the jury pool that if their name was drawn as a prospective juror and they answered "yes" to any of these questions, they should alert the court and discuss the question at the bench. Jurors A, B, and C were among the jurors who responded affirmatively and, consequently, the court conducted individual voir dire of each juror. The court found each of these three jurors qualified over the defendant's objection. The defendant exhausted his three peremptory challenges, see RSA 606:3, III (2001), but did not exercise them on Jurors A, B, and C. These three jurors were not selected as alternates and participated in the jury deliberations that resulted in the defendant's convictions. We now examine the voir dire testimony of Jurors A, B, and C, and address the defendant's arguments on appeal as to each juror.

A. Juror A

Juror A informed the court that, approximately ten years ago, her son had been a police officer and that her former significant other had been a part-time police officer. She stated that these relationships would not impact her

3

ability to be fair and impartial. Juror A also advised the court that she previously worked as a para-educator and "was trained to be a child advocate for nonverbal and nontraditional children." She explained that, in that capacity, she once had to report a suspected sexual assault of one of her students to her supervisor. She said that her only involvement after that report was to do a "write up" of the allegation for the school district. She also explained that no one was ever prosecuted for the assault because the alleged perpetrator was a family member of the child and the child's parent "did not want [the alleged perpetrator] to go to jail." When asked by the court whether that experience "would affect [her] ability to be fair and impartial in this case," Juror A said, "I would say no, with a little bit of apprehension, because I just felt like the child wasn't advocated . . . for properly." Juror A further stated that she "would do [her] best here to do what's right and answer honestly to [her] heart." In response to questioning by counsel, Juror A admitted that, when hearing the instant case, her "mind [could] go back to that kid" and that the experience "had an effect on [her]."

Defense counsel moved to strike Juror A for cause because "[s]he didn't express a certainty that she could be fair" and, due to the similarities between the instant case and her prior experience, Juror A might "want to see justice done that wasn't done before." The court denied the motion and explained, "I think her answers were candid and honest. I don't think that her employment would categorically deny -- would require her not to serve as a juror."

On appeal, the defendant argues that the record does not establish that Juror A would be able to set aside her personal experience involving an allegation of sexual abuse and render an unbiased verdict. He asserts that the facts here are analogous to those presented in State v. Town. In Town, the defendant was charged with aggravated felonious sexual assault. Town, 163 N.H. at 791. The challenged juror in that case disclosed to the court that she had been a victim of sexual assault at the age of fourteen. Id. When the court asked the juror if that experience prevented her from being fair and impartial, she replied, "I think I need to do this." Id. (quotation omitted). When asked again by the court and for a third time by defense counsel if her personal experience would prevent her from being impartial, she answered, "I'm not sure." Id. at 791-92. On two occasions, the court asked the juror whether she could set aside her personal situation and judge the case solely on the evidence, and each time the juror responded that she would "try." Id. After considering the entirety of the juror's voir dire, we held that the juror's "indication that she would 'try' to be fair and impartial, without more, was insufficient" to establish her impartiality. Id. at 794.

The defendant argues that Juror A's statement that she would "do [her] best" is indistinguishable from the statement made by the juror in Town that she "would try," Town, 163 N.H. at 792, and, therefore, the court should reverse the trial court as it did in Town. We disagree. We analyze the voir dire

4

statements of jurors in the context of their entire <u>voir</u> <u>dire</u>, <u>see</u> <u>id</u>. at 794, not in isolation.  Here, unlike in <u>Town</u>, the juror had not been a victim of sexual assault.  Rather, Juror A's experience with sexual assault was more remote: in the course of her employment, she once reported the suspected sexual assault of a student to her supervisor.  Nor, in contrast to the juror in <u>Town</u>, did Juror A express a desire to serve on the jury as a means of rectifying injustice that she perceived as a result of her past experience.  Although defense counsel argued that Juror A should be stricken for cause because she "may want to see justice done that wasn't done before," in fact, Juror A made no statement substantially equivalent to the statement of the juror in <u>Town</u> that "I need to do this," <u>id</u>. at 791.

In addition, Juror A's statements about her ability to be fair and impartial were not as equivocal as the statements at issue in <u>Town</u>.  In <u>Town</u>, the juror repeatedly said she was "not sure" whether she could be impartial and that she "would try" to set aside her personal situation.  <u>Id</u>. at 791-92.  Here, when asked if her experience with the student at school would affect her ability to be fair and impartial, Juror A said "no" — with the caveat that the child had not been advocated for properly.  She followed that statement up by saying she would "do [her] best here to do what's right and answer honestly to [her] heart."

Although Juror A's statement that she would "do [her] best here to do what's right and answer honestly to [her] heart" was ambiguous, we have observed that it is "not uncommon for jurors to express themselves in ambiguous and seemingly contradictory ways." <u>Addison</u>, 165 N.H. at 448; <u>see also</u> <u>Patton</u>, 467 U.S. at 1039 ("Jurors . . . cannot be expected invariably to express themselves carefully or even consistently.").  Indeed, "[d]emeanor, inflection, [and] the flow of the questions and answers can make confused and conflicting utterances comprehensible." <u>Addison</u>, 165 N.H. at 447 (quotation omitted).  Nor must a trial court extract particular talismanic or magic words during <u>voir</u> <u>dire</u> in order to find a juror qualified.  <u>See</u> <u>Tabaldi</u>, 165 N.H. at 312 ("[I]mpartiality is not a technical conception." (quotation omitted)); <u>see also</u> <u>United States v. Wood</u>, 299 U.S. 123, 145-46 (1936) ("For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula."); <u>State v. Clayton</u>, 995 S.W.2d 468, 476 (Mo. 1999) (en banc) ("A trial court's determination whether to excuse a juror for cause is not dependent upon a technical evaluation of the venireperson's use of 'magic' words.").

Given the ambiguous nature of Juror A's statements, the trial court was in the best position to evaluate the certainty of Juror A's initial affirmation that her personal experience would not prevent her from being impartial, and the degree to which her later statements undermined that assertion.  <u>See</u> <u>Addison</u>, 165 N.H. at 447; <u>see also</u> <u>Patton</u>, 467 U.S. at 1040 ("[W]hile the cold record arouses some concern, only the trial judge could tell which of these answers

5

was said with the greatest comprehension and certainty.").  Taking into account our deferential standard of review, and the series of statements made by Juror A, we conclude that the trial court sustainably exercised its discretion when it denied the defendant's motion to strike Juror A for cause.

B. Juror B

In response to the court's questions to the entire jury pool, Juror B told the court that her husband had been sexually abused fifty-five years ago when he was a child.  She stated that she did not think that this fact would impact her ability to be fair and impartial.  She explained that her husband does not talk about his experience but that she does "see some effects" of it.  When asked whether she would think about her husband's experience at the trial, she answered, "No."

In the course of the court's questioning about her husband's history, Juror B also informed the court that she was a nurse.  Upon further questioning, Juror B explained that, before retiring, she had worked as a school nurse in a high school for approximately twenty years.  As a high school nurse, she was aware of students who had been sexually abused.  However, she did not participate directly in students' care related to abuse because that was the school counselor's responsibility.  Defense counsel then engaged in the following exchange with Juror B:

> [Defense counsel]: Okay.  Do you feel like if . . . a young person was testifying about something . . . that had happened to them as a child . . . you'd be inclined to believe them?
>
> [Juror B]: I think so.
>
> [Defense counsel]: Um-hum.  And so you'd sort of presume they're telling the truth?
>
> [Juror B]: I would think so, yeah.
>
> [Defense counsel]: Yeah.  Because . . . you're not really feeling that kids lie, in your experience?
>
> [Juror B]: No.  [They] [s]ometimes fib a little.
>
> [Defense counsel]: Yeah.  But about big things, maybe not?
>
> [Juror B]: Probably not.

Defense counsel moved to strike Juror B for cause because "she's worked with children for so many years" and would therefore have a bias in favor of the

6

twenty-year-old complainant who would be testifying about alleged childhood sexual abuse. The trial court denied the request, explaining:

> I understand that's an [empanelled] individual voir dire process, as well, but I mean, I think good cross-examination begins (indiscernible) by suggesting the nature of the questions. So I don't think there's really revealing anything of a personal bias. I think if she follows my instructions, she'll be able to be impartial. I just -- even though she said that she might want to believe kids, I think that's a personal position with a lot of people. So the point of this exercise is not to allow folks to cross-examin[e] jurors. Okay?
>
> So I just don't think anything in her demeanor, and she came up here to report that her . . . second husband . . . disclosed an assault that she had . . . no knowledge. So I mean, I think she might be a perfect candidate for a peremptory [challenge], but I don't think there's enough to strike her for cause. If that were true, no one that works in a high school would be able to serve as a juror. No one that works [as] a nurse would be able to serve.
>
> . . . .
>
> And so I mean, I could cross-examine half the people in this room and get up to look like they had bias, but really they don't. So request is denied.

The defendant first argues that the record does not support the trial court's finding that Juror B could set aside the fact that her husband had been sexually abused and render an unbiased verdict. We disagree. The record demonstrates that Juror B "[didn't] think" her husband's history of abuse would impact her ability to be fair and impartial. She also definitively answered "No" when asked whether she would think of her husband's experience during the trial. The record therefore provides ample support for the trial court's decision not to strike Juror B for cause due to her husband's history of sexual abuse. Cf. Town, 163 N.H. at 794 (reversing trial court's qualification of juror who had been victim of sexual assault and who repeatedly stated she was "not sure" whether she could be fair and impartial).

The defendant also argues that the record fails to establish that Juror B could overcome her bias in favor of children and young adult witnesses. The defendant contends that Juror B's responses — particularly her responses to questions posed by counsel — reveal that she has a "tendency to credit children and young witnesses more than . . . adults." We are not persuaded.

7

We have observed that prospective jurors "may never have been subjected to the type of leading questions and cross-examination tactics" that attorneys frequently employ during voir dire examination, that "prospective jurors represent a cross section of the community, and [that] their education and experience vary widely." Addison, 165 N.H. at 448 (quotation and brackets omitted). And, "unlike witnesses, prospective jurors have had no briefing by lawyers prior" to voir dire. Patton, 467 U.S. at 1039. Every trial court judge intimately understands these realities, and, therefore, "under our system it is that judge who is best situated to determine competency to serve impartially." Addison, 165 N.H. at 448 (quotation omitted). "The trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading." Id. (quotation omitted).

We are not convinced that Juror B's voir dire responses demonstrate that she had a tendency to credit children and young adult witnesses more than adults, as the defendant suggests. In response to counsel's questions, Juror B stated that she would presume that a young adult, testifying under oath, would tell the truth about something that happened to her as a child, and, that in Juror B's experience, children typically do not lie about "big things." However, Juror B's testimony does not establish whether she had the same experience with adults or whether she would apply the same presumption to witnesses other than young adults and children.

Nevertheless, for the purposes of our analysis, we will assume, without deciding, as the defendant argues, that defense counsel's questioning of Juror B exposed a bias in favor of children and young adult witnesses. That bias was seemingly at odds with her earlier responses. At the beginning of jury selection, the court asked the prospective jurors whether they had "any prejudice either for or against the Defendant, any of the prospective witnesses, or the lawyers" or "any prejudices whatsoever that might affect your ability to be fair and impartial." Juror B did not answer "yes" to this question — as she might have to disclose potential bias in favor of children or young adults as a result of her work as a school nurse. Rather, she told the court that her husband had been the victim of a sexual assault. Consequently, the trial court could have reasonably inferred from the fact that Juror B did not independently raise the issue of her work as a school nurse as a source of bias as demonstrating that Juror B did not view it as impacting her impartiality.

Viewed as a whole, Juror B's voir dire testimony was seemingly contradictory. In resolving this conflict, the trial court could consider the fact that the testimony showing bias was elicited in response to counsel's leading questions, and, therefore, the court was entitled to give it less weight. See Addison, 165 N.H. at 448 (observing that trial judge may choose to believe those statements "that appear[] to have been least influenced by leading" (quotation omitted)). Under these circumstances, we give substantial deference to the trial court's assessment of the entirety of Juror B's voir dire, including

factors that are impossible to fully capture on the record.  See id. at 447-48; see also Patton, 467 U.S. at 1039-40 (concluding that ambiguity in the three challenged jurors' testimony was "insufficient to overcome the presumption of correctness owed to the trial court's findings").  Accordingly, we conclude that the trial court sustainably exercised its discretion when it denied the defendant's motion to strike Juror B for cause.[1]

C. Juror C

In response to the court's questions to the jury pool, Juror C informed the court that he was personally acquainted with a police officer whom the court had identified as one of the witnesses in the case.  Juror C explained that he serves as a member of the Planning Board and of the School Board, and that the officer is a member of the Board of Selectmen in the same town.  He stated that, in their official capacities, he and the officer "worked together on a couple of different things," but that the officer was not his superior on those projects.  He also noted that he is "close friends" with the officer's father-in-law and that the officer's wife "taught [his] kids at school."  However, Juror C clarified that he does not "hang out" with the officer outside of professional functions and that his relationship with the officer is "more formal" than that with the officer's wife and father-in-law.  When questioned by the court about the impact of his acquaintance with the officer on his impartiality, Juror C said he "absolutely" would be able to put aside his relationship with the witness when judging his credibility, and unequivocally affirmed that he would "judge his credibility just as [he] would any other citizen."  Juror C stated that he did not "really see a conflict" between his acquaintance with the officer and his ability to serve as a juror and that he could "hear what [the officer] [has] to say" and consider "well, okay, maybe there's that, [and] maybe there's something else."

Outside the presence of Juror C, the court asked counsel what role the officer would play at trial.  Defense counsel stated that the officer had conducted the initial interview with the complainant and would be the only police witness at trial.  The State represented that the officer would be a "procedural witness" for the State and that "[t]he case is not going to turn on him."  Defense counsel thereafter moved to strike Juror C for cause, asserting that "because [the officer is] the only witness really from law enforcement that the State is going to put on, his impact, even though he's not an opinion witness or an eyewitness . . . [will be] magnified."  Defense counsel also argued that, because "the only eyewitness that's going to testify is the victim herself, the jury is going to probably put more weight on law enforcement than they would otherwise."  The trial court denied the motion, stating, "I think his

---

[1] We observe that the use of leading questions often obscures, rather than exposes, a juror's ability to be impartial and that "answers to open-ended questions are more likely to reveal a juror's true feelings."  United States v. Fell, 372 F. Supp. 2d 766, 772 (D. Vt. 2005).

9

answers were very honest, his demeanor -- I mean, he had a professional relationship; it's a small town, there's going to be overlap. He doesn't know him, he doesn't . . . go to his house, or anything like that." At trial, the officer testified that he interviewed the complainant, describing her demeanor and emotional state during the interview.

On appeal, the defendant argues that the record does not establish that Juror C could set aside his personal relationships with the officer, the officer's wife, and the officer's father-in-law because, during jury selection, the court mistakenly assumed that the officer would serve as only a "procedural witness" and that his "credibility would not be at issue." The defendant asserts that, contrary to the court's pretrial assumptions, the officer's testimony at trial was significant: the officer testified about his interview of the complainant and described the complainant's demeanor and emotional state when discussing the alleged assaults. See State v. Sulloway, 166 N.H. 155, 164 (2014) (observing that evidence of the complainant's demeanor when discussing an alleged assault "is independent evidence that . . . she was the victim of sexual assault" (quotation omitted)).

The record demonstrates that Juror C did not have a close relationship to the officer: Juror C did not socialize or "hang out" with the officer outside of their professional interactions, he had never been to the officer's house, and he considered his relationship with the officer "formal." This is consistent with Juror C's answers on the jury questionnaire, where he stated that he did not have a "close friend or relative" who was a member of a local, state, or federal law enforcement agency. Although Juror C had close relationships with the officer's family members, Juror C unequivocally affirmed that he "absolutely" would be able to set aside those relationships in evaluating the officer's credibility. These facts, in conjunction with the trial court's assessment of Juror C as "very honest," support the trial court's denial of the motion to strike Juror C for cause. See State v. Sharrow, 949 A.2d 428, 433-34 (Vt. 2008) (affirming trial court's denial of motion to strike prospective juror who "repeatedly and thoughtfully" stated that he could remain impartial, despite his decades of experience as a police officer and teacher and his acquaintance, in those capacities, with several of the State's police officer witnesses).

In arguing for a contrary result, the defendant asserts that the trial court's decision was predicated upon two incorrect assumptions: that the officer would serve merely as a "procedural witness" and that the officer's "credibility would not be at issue." First, we are not convinced that the officer's testimony at trial was more consequential than the State had represented it would be during the jury selection process. Although the officer testified regarding the complainant's demeanor and emotional state while discussing the alleged assaults, the officer was not the only witness to testify on that issue. A New Hampshire Division for Children, Youth, and Families ("DCYF") case worker — who was present during the officer's interview of the

complainant — also testified to the complainant's emotional state during the interview. Moreover, even if we were to accept the defendant's assertion that the nature and extent of the officer's trial testimony materially differed from the State's pre-trial representations, that would not nullify the import of Juror C's unequivocal statements that he could set aside his acquaintance with the officer and "judge [the officer's] credibility just as [he] would any other citizen."

Second, we disagree with the defendant's characterization of the record as demonstrating that the trial court assumed the officer's credibility would not be at issue. There is no evidence in the record to support that assertion. Moreover, it is always "the province and obligation of the jury to determine the credibility of witnesses." State v. McDonald, 163 N.H. 115, 121 (2011). Accordingly, we conclude that the trial court's denial of the motion to strike Juror C for cause was a sustainable exercise of discretion.

D. <u>Summary of Analysis of Motions to Strike Jurors for Cause</u>

In sum, we conclude that the trial court sustainably exercised its discretion when it denied the defendant's motions to strike Jurors A, B, and C for cause. See Tabaldi, 165 N.H. at 313. Because the State Constitution provides at least as much protection as the Federal Constitution on this issue, see id., we reach the same conclusion under the Federal Constitution.

We observe that, on several occasions, the trial court could have created a better record by pressing the jurors to clarify their statements. For example, following Juror A's statement that she would "do [her] best here to do what's right and answer honestly to [her] heart," the court could have asked her to clarify the meaning of her statement. Likewise, after counsel used leading questions to elicit testimony about Juror B's possible bias in favor of children and young adults, the trial court did not follow-up with questions for Juror B in an attempt to discover whether Juror B could actually set that bias aside and impartially judge the case based on the evidence presented. It would have been informative and helpful had the trial court done so.

That is not to say that, in order to be found qualified, a juror must utter certain "magic words." However, when there are legitimate concerns as to whether a juror can be impartial, the trial court has a duty to determine whether the juror can be indifferent. See id. at 312. Fulfilling this duty may require that the trial court probe further after the juror's initial responses to the questions of counsel or the court — especially when the juror uses ambiguous phrases such as "I would try" or "I would do my best." Cf. State v. Bedell, 169 N.H. 62, 66-67 (2016) (holding that trial court erred in dismissing juror as biased during trial in part because the court failed to question juror to determine whether counsel's opening statement had impacted her impartiality). Compare Tabaldi, 165 N.H. at 313 (affirming trial court's denial of motion to strike when, although juror initially said she would "do her best" to set aside

11

her bias against convicted felons, the trial court probed further to confirm that juror would not hold the defendant's prior conviction against him), with Town, 163 N.H. at 794-95 (reversing trial court's denial of motion to strike juror who had been victim of same type of crime defendant was charged with and who continued to equivocate about her ability to be impartial in response to trial court's multiple attempts to clarify her testimony). In sum, we recognize that the trial judge is in the best position to assess and respond to practical challenges encountered during jury selection, and we therefore encourage trial courts to probe, as necessary, to discern the meaning of vague or equivocal statements made by prospective jurors, to fully explore potential biases, and to ensure impartiality.

II.     In Camera Review of Confidential Records

We now turn to the second issue raised by the defendant on appeal. In the defendant's brief, filed on May 4, 2020, he argued that the trial court may have erred when, after conducting an in camera review of confidential DCYF records, the court ordered that only some of those records be disclosed to the defendant. He requested that we conduct an in camera review of those records to determine whether the trial court unsustainably exercised its discretion by withholding some of them. While this appeal was pending, we decided State v. Girard, 173 N.H. 619 (2020), which clarified the standard the trial court must apply when determining whether confidential records must be disclosed to a defendant, Girard, 173 N.H. at 627-29. We therefore remanded this case to the trial court for the limited purpose of reviewing the confidential DCYF records again, in accordance with the standard set forth in Girard.

We instructed the trial court to report the results of its review to this court. We advised that, if the court determined that it would have disclosed any of the withheld records before trial had it applied the standard set forth in Girard, it must order a new trial unless it determined that its failure to disclose such records was harmless beyond a reasonable doubt. See id. at 630. We instructed the court that, if it determined that its failure to disclose records was harmless beyond a reasonable doubt, it should identify in its report to this court the records that it would have disclosed.

The trial court completed its review of the records on November 4, 2020, and determined that it would not have disclosed any additional records to the defendant had it originally applied the standard later set forth in Girard. The defendant now argues that the trial court may have erred in applying the Girard standard on remand when it failed to disclose additional confidential records.

The issue before us is whether the trial court unsustainably exercised its discretion when, applying the Girard standard, it did not disclose additional confidential records. See id. at 627. We must determine whether the trial

12

court's rulings on this discovery issue were clearly untenable or unreasonable to the prejudice of the defendant's case.  See State v. Guay, 162 N.H. 375, 385 (2011).  Our task is to decide whether the trial court sustainably exercised its discretion when it determined that the undisclosed confidential records do not contain evidence that would have been "material and relevant" to the defendant's defense, see Girard, 173 N.H. at 628.  After reviewing the same confidential records that were examined by the trial court, we conclude that the trial court sustainably exercised its discretion when it determined that, had it applied the standard set forth in Girard before trial, it would not have disclosed additional records.  See Guay, 162 N.H. at 385.

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.